## SECOND STONE RIDGE COOPERATIVE CORPORATION *v.* CITY OF BRIDGEPORT
### (14148)

PETERS, C. J., SHEA, CALLAHAN, GLASS, COVELLO, BORDEN and SANTANIELLO, Js.

Argued May 1—decision released September 19, 1991

*Richard S. Scalo,* for the appellant-appellee (defendant).

*Robert S. Peeters,* for the appellee-appellant (plaintiff).

COVELLO, J. This is an application for relief from the allegedly wrongful assessment of real property brought pursuant to General Statutes § 12-119.[1] The issues presented are: (1) Can routine disputes as to the value of real property serve as the basis for an application for relief pursuant to § 12-119; (2) Does the adoption of the "cost of reproduction" method of evaluation of real property when unsupported by underlying data result in an illegal assessment so as to warrant relief under § 12-119; and (3) Can the provisions of a regulatory agreement of the federal housing commissioner, contained in a mortgage assumption agreement, create a real property interest in the federal housing commissioner so as to warrant a proration of the real property assessment between the owner and the federal housing commissioner.

On July 6, 1988, the plaintiff, Second Stone Ridge Cooperative Corporation (Stone Ridge), filed an application in the Superior Court for relief from a wrongful assessment of real property pursuant to § 12-119. The application alleged that Stone Ridge was the owner

---

[1] General Statutes § 12-119 provides: "REMEDY WHEN PROPERTY WRONGFULLY ASSESSED. When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof . . . may, in addition to the other remedies provided by law, make application for relief to the superior court . . . . In all such actions, the superior court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains . . . ."

of land and buildings in the defendant city of Bridgeport subject to taxation on the grand list of October 1, 1987. The application further alleged that the Bridgeport assessors had valued the land for assessment purposes at $587,440 and the buildings at $1,929,424, for a total assessment of $2,516,864. See footnote 2, infra. Finally, the application alleged that the valuation "[did] not properly allocate the assessment to various parties owning interests in the property" and that the resulting tax was manifestly excessive, and disregarded both the statutes for determining real property values and "the interests of the owner as affected by the interest of the Federal Housing Commissioner in the subject premises."

The state trial referee found that Stone Ridge was "a nonpublic, subsidized cooperative housing project consisting of 189 duplex, two story units in 26 buildings, constructed in 1964." The shareholders occupying the units pay a monthly pro rata carrying charge in an amount equal to the funds necessary to pay the cooperative's operating expenses, debt service and reserve for maintenance and repairs. Any excess in income generated by the cooperative must go into a reserve fund solely for maintenance and repair of the facility. Membership in the cooperative is limited to families whose income does not exceed standards set by the United States Housing and Urban Development agency (HUD).

Stone Ridge raised two claims to the trial referee. First, it claimed that the method used by the Bridgeport assessors in making the October, 1987 assessment was contrary to the appraisal methods permitted under the statute for determining the fair market value of real property subject to assessment. Second, it claimed that the tax levied should be prorated between Stone Ridge and HUD "because many of the bundle of rights associated with ownership belong to HUD [and] not to

[Stone Ridge] under the regulatory agreement and mortgage covenants between the cooperative and HUD."

As to the first claim, that Bridgeport's assessors used the wrong method in assessing Stone Ridge's property, the trial referee found that Bridgeport's valuation of the property was based on the cost of building replacement. The trial referee further found that "there was no data on which to make that evaluation, and none was provided by the person who testified for the city." The trial referee found it significant that the two experts who testified agreed "that the only feasible method of evaluating the plaintiff's property is through income capitalization." The trial referee concluded "that the assessment in question was wrongful in that it was derived from an inappropriate method of evaluation contrary to the statutes and that it was manifestly excessive."

As to Stone Ridge's second claim, that the tax levied should be prorated between Stone Ridge and HUD, the trial referee concluded that General Statutes § 12-64 required that "the title holder be the person or entity subject to the tax." Because the Bridgeport land records "clearly identif[ied] [Stone Ridge] as the title holder of the property in question," the trial referee concluded that Stone Ridge "is the appropriate entity subject to the tax."

The trial referee rendered judgment reducing the fair market value of the property as of October 1, 1987, from $3,595,520 to $1,700,000.[2] Bridgeport appealed

---

[2] The $3,595,520 value discussed in the trial referee's decision was the 100 percent fair market value of the property. In Bridgeport, real property is assessed at 70 percent of its fair market value. The $2,516,864 value referred to in Stone Ridge's application represented the 70 percent value used for assessment purposes. The trial referee's decision that Stone Ridge's property had a fair market value of $1,700,000 had the effect of reducing the property's 70 percent assessed value to $1,190,000, a 52.7 percent reduction in value.

to the Appellate Court and Stone Ridge cross appealed. We transferred the matter to this court pursuant to Practice Book § 4023.

Although Bridgeport asks us to address other issues, the disposition of this matter requires us to focus first on whether an application for relief under § 12-119 is authorized under the factual circumstances presented in this case. We conclude that § 12-119 does not authorize such proceedings under these circumstances.

We have, upon a number of occasions, distinguished General Statutes §§ 12-115 and 12-118[3] from their companion statute, § 12-119. See footnote 1, supra. "Our statutes [§§ 12-115 and 12-118] provide a method by which an owner of property may directly call in question the valuation placed by assessors upon his property by an appeal to the board of [tax review for] relief, and from it to the courts. . . . These statutes limit to a short period the time within which the property owner can seek relief under them, and the purpose of this is undoubtedly to prevent delays in the ultimate determination of the amounts a municipality can collect as taxes." *Cohn* v. *Hartford,* 130 Conn. 699, 702, 37 A.2d 237 (1944).

On the other hand, § 12-119 allows a taxpayer one year to bring a claim that the tax was imposed by a town that had no authority to tax the subject property,

---

[3] *General Statutes § 12-115 provides in relevant part:* "Any person aggrieved by the action of [a board of tax review] may, within two months from the time of such action, have the same right of appeal to the superior court as provided by section 12-118. . . ."

General Statutes § 12-118 provides in relevant part: "Any person . . . claiming to be aggrieved . . . may, within two months from the time of such action, make application, in the nature of an appeal therefrom, to the superior court . . . . The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable . . . ."

or that the assessment was "manifestly excessive *and* could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of [the real] property . . . ." (Emphasis added.) Our case law makes clear that a claim that an assessment is "excessive" is not enough to support an action under this statute. Instead, § 12-119 requires an allegation that something more than mere valuation is at issue. It is this element that distinguishes § 12-119 from its more frequently invoked companion, § 12-118. In *Connecticut Light & Power Co.* v. *Oxford,* 101 Conn. 383, 392, 126 A. 1 (1924), we addressed the predecessor statute of § 12-119 and concluded that there were two possible grounds for recovery under the statute: "the absolute nontaxability of the property in the municipality where situated, and a manifest and flagrant disregard of statutory provisions." Claims under § 12-119 must fall into one of these two categories.

"The first category in the statute embraces situations where a tax has been laid on property not taxable in the municipality where it is situated . . . ." *E. Ingraham Co.* v. *Bristol,* 146 Conn. 403, 408, 151 A.2d 700, cert. denied, 361 U.S. 929, 80 S. Ct. 367, 4 L. Ed. 2d 352 (1959). This category includes claims alleging that the municipality has exceeded the scope of its taxing power. Cases that fit in this category include *Fenwick* v. *Old Saybrook,* 133 Conn. 22, 24, 47 A.2d 849 (1946) (municipality cannot tax a public park established by a borough of the municipality), and *First National Bank & Trust Co.* v. *West Haven,* 135 Conn. 191, 194, 62 A.2d 671 (1948) (municipality has no authority to tax the property of a national bank). See also *Hartford Electric Light Co.* v. *Wethersfield,* 165 Conn. 211, 332 A.2d 83 (1973) (utility right-of-way generally not taxable separate from freehold to which attached); *Security Mills, Inc.* v. *Norwich,* 145 Conn. 375, 143 A.2d 451 (1958)

(assessment cannot be levied on personal property not located in municipality).[4]

The second category consists of claims that assessments are "(a) manifestly excessive *and* (b) . . . could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of the property." (Emphasis added.) *E. Ingraham Co.* v. *Bristol,* 146 Conn. 403, 409, 151 A.2d 700, cert. denied, 361 U.S. 929, 80 S. Ct. 367, 4 L. Ed. 2d 352 (1959). Cases in this category must contain allegations beyond the mere claim that the assessor overvalued the property. "[The] plaintiff . . . must satisfy the trier that [a] far more exacting test" has been met: either "there was misfeasance or nonfeasance by the taxing authorities, or the assessment was arbitrary or so excessive or discriminatory as in itself to show a disregard of duty on their part." *Mead* v. *Greenwich,* 131 Conn. 273, 275, 38 A.2d 795 (1944). Only if the plaintiff is able to meet this exacting test by establishing that the action of the assessors would result in illegality can the plaintiff prevail in an action under § 12-119. The focus of § 12-119 is whether the assessment is "illegal." *Cohn* v. *Hartford,* 130 Conn. 699, 703, 37 A.2d 237 (1944); see *E. Ingraham Co.* v. *Bristol,* supra, 408 (municipality disregarded the statutes when it taxed real property at 50 percent of its value, personal property at 90 percent and motor vehicles at 100 percent at a time when municipalities were prohibited from assessing property as a percentage of its value); *Strat-*

---

[4] For cases in which similar claims have been raised and rejected, see *Faith Center, Inc.* v. *Hartford,* 192 Conn. 434, 437, 472 A.2d 16, cert. denied, 464 U.S. 1018, 105 S. Ct. 432, 83 L. Ed. 2d 359 (1984) (assessment on property claimed tax exempt fell within confines of General Statutes § 12-119); *Crescent Beach Assn.* v. *East Lyme,* 170 Conn. 66, 363 A.2d 1045 (1976) (land claimed exempt as for a public purpose fell within statute); *Curly Construction Co.* v. *Darien,* 147 Conn. 308, 160 A.2d 751 (1960) (plaintiff had not met burden of proving equipment had not acquired tax situs in Connecticut); *Associated Grocers, Inc.* v. *New Haven,* 147 Conn. 287, 160 A.2d 489 (1960) (stock inventory taxable where located.)

*ford Arms Co.* v. *Stratford,* 7 Conn. App. 496, 500, 508 A.2d 842 (1986) (property could not be taxed as condominiums when still legally an apartment building at date of assessment). The statute applies only to an assessment that establishes "a disregard of duty by the assessors." *L. G. DeFelice & Son, Inc.* v. *Wethersfield,* 167 Conn. 509, 513, 356 A.2d 144 (1975).

Although the time for initiating an action pursuant to § 12-118 had long since expired, Stone Ridge claimed the right to proceed under § 12-119 on the basis of its allegations that the Bridgeport assessors used an incorrect method in valuing the Stone Ridge apartment complex. The state trial referee agreed and, having concluded that the assessment was wrongful "in that it was derived from an inappropriate method of evaluation," proceeded to revalue the property. We disagree.

"[T]he process of estimating the value of property for taxation is, at best, one of approximation and judgment, and there is a margin for a difference of opinion." *Burritt Mutual Savings Bank* v. *New Britain,* 146 Conn. 669, 675, 154 A.2d 608 (1959). "There may be more ways than one of estimating the value of such . . . [property] for taxation." *Bridgeport Brass Co.* v. *Drew,* 102 Conn. 206, 212, 128 A.2d 413 (1925).

At least four methods exist for determining the fair market value of property for taxation purposes: (1) analysis of comparable sales; (2) capitalization of gross income; (3) capitalization of net income; and (4) reproduction cost less depreciation and obsolescence. *Lomas & Nettleton Co.* v. *Waterbury,* 122 Conn. 228, 230, 188 A. 433 (1936); see also General Statutes § 12-63b. "Each of these is an approved method of ascertaining the actual value of real estate for purposes of taxation. We so held as to the method of reproduction costs in *Underwood Typewriter Co.* v. *Hartford,* [99 Conn. 329, 337, 122 A. 91 (1923)]." *Lomas &*

*Nettleton Co.* v. *Waterbury,* supra, 231. Because we have specifically approved of the method used by Bridgeport in initially evaluating the property on the basis of its reproduction cost less depreciation, we conclude that the trial referee incorrectly held "that the assessment in question was wrongful in that it was derived from an inappropriate method of evaluation contrary to the statutes . . . ."

While an insufficiency of data or the selection of an inappropriate method of appraisal could serve as the basis for not crediting the appraisal report that resulted, it could not, absent evidence of misfeasance or malfeasance, serve as the basis for an application for relief from a wrongful assessment under § 12-119.

Because we are not faced with a situation involving the absolute nontaxability of the property and because the selection of an inappropriate method of appraisal or a paucity of the underlying data in connection with an appraisal, without more, is not manifestly illegal under our statutes, we conclude that the circumstances presented here do not rise to the level of the extraordinary situation that would warrant tax relief under the provisions of § 12-119.

Because we have concluded that an appeal under § 12-119 was not authorized under these circumstances, we need not address Bridgeport's further claim that the trial referee incorrectly revalued the property as of October 1, 1987, instead of October 1, 1983, the date of the last decennial revaluation. See, however, *Ralston Purina Co.* v. *Board of Tax Review,* 203 Conn. 425, 525 A.2d 91 (1987); *Uniroyal, Inc.* v. *Board of Tax Review,* 182 Conn. 619, 629, 438 A.2d 782 (1981).

In its cross appeal, Stone Ridge claims that the trial referee should have prorated the assessment between Stone Ridge and HUD because HUD has an "interest" in the property. Specifically, Stone Ridge argues that

as a condition for obtaining federally subsidized financing for the project, the original developer had to relinquish many of the rights fundamental to the ownership of real property for forty years.[5] Thereafter, when Stone Ridge purchased the property, assumed the federal mortgage and executed its own regulatory agreement with the federal housing authority, these restrictions became binding upon Stone Ridge. Title to the premises, however, stands in the name of Stone Ridge.

General Statutes § 12-64 (a) unequivocally declares that: "Any interest in real estate shall be set by the assessors in the list of *the person in whose name the title to such interest stands on the land records* . . . ." (Emphasis added.) Stone Ridge cites no authority for the proposition that the assessment should be shared with HUD because of the control that HUD exercises over the property. In fact, there is support for the contrary proposition. See *Federal Compress & Warehouse Co.* v. *McLean,* 291 U.S. 17, 22–23, 54 S. Ct. 267 (1934). Since title to the property stands in the name of Stone Ridge, we hold that the trial referee correctly concluded that Stone Ridge is the entity subject to assessment and the resulting tax.

With respect to the appeal, the portion of the judgment modifying the value of the Stone Ridge property as of

---

[5] The plaintiff's experts claimed that the following incidents of ownership were implicated by the agreement between Stone Ridge and HUD: (1) The right to sell the property; (2) The right of voluntary disposition; (3) The right to redeem the mortgage; (4) The right to determine or amend the occupancy agreement with Cooperative members; (5) The right to refinance the mortgage; (6) The right to select tenants without regard to income; (7) The right to increase income; (8) The right to retain the income; (9) The right to give preference to occupants of its choice; (10) The right to refuse tenants with marginal income; (11) The right to hire management of its own choosing; (12) The right to determine necessary reserves; (13) The right to amend the Cooperative's by-laws; and (14) The right to invest funds of the Cooperative as desired.

October 1, 1987, is reversed and the case is remanded with direction to render judgment for the city of Bridgeport. With respect to the cross appeal, the portion of the judgment concluding that the entity subject to assessment and taxation is Second Stone Ridge Cooperative is affirmed.

In this opinion the other justices concurred.