[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by the plaintiff, Carol Management Corporation, pursuant to General Statutes 12-118, from a decision of the defendant Town of Greenwich Board of Tax Review. The plaintiff owns property located at 25 West Elm Street in Greenwich, consisting of a six-story residential apartment building with fifty-three rental units, plus garage space for thirteen vehicles.
On October 1, 1979, in connection with a decennial revaluation mandated by General Statutes 12-62, the Tax Assessor of the town of Greenwich determined that the new assessment for the plaintiff was $2,307,410 ($742,000 for the land, and $1,565,410 for the building) which, at a rate of 70%, translated into a fair market value of $3,296,300. General Statutes 12-63, 12-64. In 1984, the plaintiff appealed this assessment to the defendant Board, General Statutes12-111, which I refused to reduce the assessment. This appeal followed. The plaintiff subsequently amended its complaint to include a challenge to the assessed valuations on the grand lists of October 1, 1985, October 1, 1986, October 1, 1987, October 1, 1988, October 1, 1989, October 1, 1990, and October 1, 1991. General Statutes 12-118.
The defendant has interposed a special defense claiming res judicata and/or collateral estoppel because the plaintiff unsuccessfully appealed the original 1979 assessment. Initially, this appeal was in two counts, General Statutes 12-118 and 12-119. The first count was summarily dismissed by Judge Devlin in docket no. 165026 because the plaintiff had not appealed to the Board of Tax Review, a prerequisite to a 12-118 appeal. Judge Devlin denied the CT Page 10190 owner's appeal under 12-119 but never considered the 12-118 appeal on its merits. Second Stone Ridge Cooperative Corporation v. Bridgeport,220 Conn. 335, 341, 597 A.2d 326 (1991), makes clear the vast difference between 118 appeals and 119 law suits ("[t]he focus of12-119 is whether the assessment is illegal"). Accordingly, this court rejects defendant's contention that the prior suit is res judicata or that the plaintiff is collaterally estopped from pursuing this 118 suit.[1]
The standard of review in an appeal pursuant to General Statutes12-118 was set out in detail in Stamford Apartments Co. v. Stamford,203 Conn. 586, 588-89, 525 A.2d 1327 (1987), as follows: (i) the case is heard de novo; (ii) the plaintiff has the burden of proving that the defendant assessor's valuation is excessive; (in) this burden is a "difficult" one because "proper deference" as well as a "wide discretion" must be accorded to the assessors; (iv) but there is no presumption in favor of the assessor's valuation which needs to be rebutted by the taxpayer; and (v) the court's task is to determine whether the property has been "substantially overvalued," and if so, then to ascertain the true and actual value of the plaintiff's property.
General Statutes 12-63 indicates that the standard for valuation is the property's "present true and actual valuation," which is synonymous with "market value, actual value, fair market value, market price and fair value. . ." Uniroyal. Inc. v. Board of Tax Review, 182 Conn. 619,623 n. 3, 438 A.2d 782 (1981). "Fair market value" is defined as "the value that would be fixed in fair negotiations between a desirous buyer and a willing seller, neither under any undue compulsion to make a deal." Uniroyal. Inc. v. Board of Tax Review, 174 Conn. 380,390, 389 A.2d 734 (1978). A further definition is found in Mazzola v. Commissioner, 175 Conn. 576, 581-82, 402 A.2d 786 (1978), to the effect that "[t]he fair market value is the price that a willing buyer would pay a willing seller based on the highest and best possible use of the land assuming, of course, that a market exists for such optimum use." "An assessment of land at its fair value, of necessity, regardless of the method of valuation, takes into account the highest and best value of the land." Whitney Center. Inc. v. Hamden,4 Conn. App. 426, 428, 494 A.2d 624 (1985). As was said in State National Bank v. Planning Zoning Commission, 156 Conn. 99, 101, 239 A.2d 528
(1968), "[t]he `highest and best use' concept, chiefly employed as a starting point in estimating the value of real estate by appraisers, has to do with the use which will most likely produce the highest market value, greatest financial return, or the most profit from the use of a particular piece of property." CT Page 10191
General Statutes 12-63b provides that in the case of rental producing real property, the assessment should be based on "current bona fide sales of comparable property" if there are any. Otherwise, the assessor shall consider each of the following: "(1) Replacement cost less depreciation, plus the market value of the land, (2) the gross income multiplier method as used for similar property and (3) capitalization of net income based on market rent for similar property," but only "to the extent applicable."
The defendant determined that the highest and best use of the subject premises was as a condominium development, that is, that the apartment use would best be converted to residential condominiums. The plaintiff contends, on the other hand, that the building in question, which was constructed around 1938, remained as individually rented apartments in 1979 at the time of the assessment in issue, and was still in that same status at the time of trial in 1992, constituting well over fifty years of continued apartment use.
This case is, I believe, markedly similar to Stamford Apartments Co. v. Stamford, supra, 593. The Supreme Court stated that in assessing an apartment building based on an assumed conversion to condominium use the standard was "probability of conversion." The court quoted from Budney v. Ives, 156 Conn. 83, 88, 239 A.2d 482 (1968), which stated that the "purported change must be reasonably probable in the near future." Id., 592. Thus, me "highest and best use" concept is modified to the extent that the real issue becomes "probability of conversion."
Based on the evidence at the trial of this case, the court concludes that it was not reasonably probable on October 1, 1979 that the premises in question would be converted to condominium use in the near future. The factors that lead to this conclusion can be summarized as follows: (i) surely the intention of the owner plays a role in the "reasonably probable" standard, and it is clear from the evidence that the plaintiff did not intend, on October 1, 1979, to convert this apartment building to condominium use; (ii) there had not been any declaration of condominium conversion filed or prepared in 1979, and the plaintiff had not taken any steps whatsoever to effect a conversion nor made any kind of announcement to that effect; (iii) the cost of renovation for a conversion of this particular building was described as high, approximately $26 a square foot, and plaintiffs management testified that they had already determined that conversion was not economically feasible;[2] (iv) there was apparently only one, or possibly two, condominium conversions in Greenwich in either 1978 or 1979, and, according to the plaintiff's appraiser, "very few" apartments had CT Page 10192 been converted to condominiums in a number of years prior to 1979; (v) there was a shortage of, and a resultant demand for, rental apartments in Greenwich in 1979; and (vi) the legislative atmosphere was changing around 1979, emphasizing the protection of senior citizens who lived in apartments, and somewhere between 30% and 50% of the tenants at 25 West Elm Street were in this category at that time.[3] It follows that the "highest and best use" of the subject premises on October 1, 1979, was its then current use as rental apartments.
Although mindful of the lack of precision inherent in the assessment process, Second Stone Bridge Cooperative Corporation, supra, 342, this court concludes that the plaintiff Carol Management has met its burden of proving that defendant's valuation of its property on West Elm Street was in fact substantially overvalued because it was based on an erroneous assumption that it was reasonably probable on October 1, 1979 that the property would be converted to condominium units. As a result, plaintiff is deemed to be aggrieved. Gorins, Inc. v. Board of Tax Review, 178 Conn. 606, 608, 424 A.2d 282
(1979). See also Pepe v. Board of Tax Review, 14 Conn. App. 705, 709,542 A.2d 756 (1988) ("over-valuation justifies redress under General Statutes 12-118").
Having found aggrievement, we must by trial de novo answer "the ultimate question . . . the ascertainment of the true and actual value of the applicant's property." O'Brien v. Board of Tax Review,169 Conn. 129, 130-31, 362 A.2d 914 (1975). General Statutes 12-118
expressly provides broad discretionary power to grant such relief, whether legal or equitable ". . . upon such terms and in such manner and form as appears equitable . . ." The court is "not limited to arbitrating the differing opinions of the witnesses . . ." but rather our task is to "make determinations in the light of all the circumstances. . ." Lamont v. New Hartford, 4 Conn. App. 303, 305,493 A.2d 298 (1985); see also Four D's. Inc. v. Mattera, 25 Conn. App. 308,316, 594 A.2d 484 (1991) (valuing real property "is a matter of opinion based on all the evidence and, at best, is one of approximation").
As was said in Second Stone Ridge Cooperative Corporation v. Bridgeport, supra, 342, "[a]t least four methods exist for determining the fair market value of property for taxation purposes: (1) analysis of comparable sales; (2) capitalization of gross income; (3) capitalization of net income; and (4) reproduction cost less depreciation and obsolescence." Although all of these methods have been approved for valuing property, comparing market sales is CT Page 10193 ordinarily the best method for determining actual value, according to Uniroyal, Inc. v. Board of Tax Review, 174 Conn. 380, 385-86,389 A.2d 734 (1978); see also Burritt Mutual Savings Bank v. New Britain,146 Conn. 669, 674, 154 A.2d 608 (1959).
The appraiser employed by the defendant based his opinion of fair market value on the anticipated conversion of the apartment to condominium use, an assumption with which this court does not agree. Therefore this appraiser's estimate of a fair market value of $3,400,000, based on a "discounted cash flow analysis" and projected sales of all 53 units over the course of the several years after conversion, is not accepted as its underlying premise is not warranted.[4]
The Town's original assessment in 1979 was based on replacement cost of $3,194,700, less depreciation and obsolescence of 30%, a method which the Town's own assessor and expert appraiser both conceded at the trial was the least accurate method of appraising this particular apartment building.
The plaintiff's appraiser testified that in his opinion the fair market value of the subject premises on October 1, 1979 was $2,400,000 rather than $3,296,300 as determined by the Town. This would translate to an assessed value of $1,680,000. I find the testimony of the plaintiff's appraiser to be credible. He used the preferred market approach, General Statutes 12-63b, and compared three sales of apartment houses in 1981, and made certain adjustments to reflect the later dates of sale, location, and parking. This witness ultimately arrived at a figure of $13,000 as an adjusted price per room and multiplied by 187, the total number of rooms at the subject premises, which resulted in a total of $2,431,000, which rounds out to $2,400,000.[5]
The fair and actual market value of the plaintiff's property as of October 1, 1979, is determined to be $2,400,000. Thus the property was overvalued by the assessor, and plaintiff's appeal is sustained. Judgment is entered establishing $1,680,000 as the assessed value of the subject premises on October 1, 1979, representing 70% of market value, and also for subsequent years. The plaintiff is entitled to a refund or credit for excess payments, if any, which may have been paid to the Town of Greenwich for assessments commencing October 1, 1984, with interest and costs as taxed by the clerk.
So Ordered.
CT Page 10194 Dated at Stamford, Connecticut, this 13th day of November, 1992.
William B. Lewis, Judge