[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiffs, Samuel Rogovin, Mary R. Rogovin, Stanley Bergman and Aaron Rogovin claimed that on October 1, 1989 they were owners of seventeen properties located in New London. They claimed the assessors valued these properties as of October 1, 1989 in the amount of $3,137,614.
Application For Relief Against Excessive Tax Valuation, ¶¶ 1, 2.
Plaintiffs claim "the assessment . . . was manifestly excessive and could not have been arrived at except by disregarding the statutes for determining the valuation of such property." Id., ¶ 4.
Plaintiffs brought this action pursuant to C.G.S. § 12-119. It reads:
 "When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof or any lessee thereof CT Page 1181 whose lease has been recorded as provided in Section 47-19 and who is bound under the terms of his lease to pay real property taxes, prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. Such application may be made within one year from the date as of which the property was last evaluated for purposes of taxation and shall be served and returned in the same manner as is required in the case of a summons in a civil action, and the pendency of such application shall not suspend action upon the tax against the applicant. In all such actions, the superior court shall have the power to grant such relief upon such terms and in such manner and form as to justice and equity appertains, and costs may be taxed at the discretion of the court. If such assessment is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes in accordance with the judgment of said court." C.G.S. § 12-119.
The plaintiffs claim that the total assessment of the seventeen properties amounted to $3,137,614. For assessment purposes, taxes were laid on the property at 70% of that value. See Application for Relief Against Excessive Tax Valuation, ¶¶ 2 and 3.
The use of C.G.S. § 12-119 is limited.
 ". . . § 12-119 allows a taxpayer one year to bring a claim that the tax was imposed by a town that had no authority to tax the subject property, or that the assessment was `manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of [the real property. . . .'"(Emphasis added.) Second Stone Ridge Cooperative Corporation v. Bridgeport, 220 Conn. 335, 339-340 (1991).
"Claims under 12-119 must fall into one of these two categories." Id., 340. CT Page 1182
"`The first category in the statute embraces situations where a tax has been laid on property not taxable in the municipality where it is situated . . . (Citations omitted).'" Id, 220 Conn. 335, 340. The plaintiffs seek "relief against a wrongful assessment of their properties for taxation by the [assessors of the Town of NewLondon] . . ." [Italics added.] Application for Relief Against Excessive Tax Valuation, p. 1. "The assessors [of thetown] valued the property . . . ." [Italics added.] Id, ¶ 2. The citation is addressed to "The City of New London." The City of New London has appeared by counsel and filed an Answer. The Counsel for the City of New London participated herein. No one on behalf of the Town of New London has participated. The court concludes that the City of New London is the proper party. Thus, it does not appear that the plaintiffs claim under the "first category;" plaintiffs do not claim that the City of New London had no authority to tax their properties.
Regarding the second category, the Supreme Court has stated:
 The second category consists of claims that assessments are "(a)manifestly excessive and (b) . . . could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of the property." (Emphasis added.) E. Ingraham Co. v. Bristol, 146 Conn. 403, 409, 151 A.2d 700, cert. denied, 361 U.S. 929, 80 S.Ct. 367, 4 L.Ed.2d 352 (1959). Cases in this category must contain allegations beyond the mere claim that the assessor overvalued the property. "[The] plaintiff . . . must satisfy the trier that [a] far more exacting test" has been met: either "there was misfeasance or nonfeasance by the taxing authorities, or the assessment was arbitrary or so excessive or discriminatory as in itself to show a disregard of duty on their part." Mead v. Greenwich, 131 Conn. 273, 275, 38 A.2d 795 (1944). Only if the plaintiff is able to meet this exacting test by establishing that action of the assessors would result in illegality can the plaintiff prevail in an action under § 12-119. The focus of § 12-119 is CT Page 1183 whether the assessment is "illegal." Second Stone Ridge Cooperative Corporation v. Bridgeport, 220 Conn. 335, 341 (1991).
The plaintiffs, in order to prevail, must sustain a burden of proof establishing that the evaluation made by the assessors was (1) "manifestly excessive," and, (2) could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of property.
The court starts with the proposition that some deference must be given the assessments made by the city assessors.
 "It is true that when a property owner challenges the assessor's valuation, "the plaintiffs' burden . . . . is a difficult one. `[P]roper deference must be given to the judgment and experience cf assessors.' Connecticut Coke Co. v. New Haven, 169 Conn. 663, 668, 364 A.2d 178
(1975). `The law contemplates that a wide discretion is to be accorded to assessors, and unless their action is discriminatory or so unreasonable that property is substantially overvalued and thus injustice and illegality result, their opinion and judgment should control in the determination of value for taxation purposes.' Federated Department Stores, Inc. v. Board of Tax Review, 162 Conn. 77. 86, 291 A.2d 715 (1971), quoting Burritt Mutual Savings Bank v. New Britain, 146 Conn. 669, 675, 154 A.2d 608
(1959)." (Emphasis added.) Uniroyal, Inc. v. Board of Tax Review, 182 Conn. 619, 633-34 n. 8, 438 A.2d 782 (1981). While we have recognized that proper deference should be accorded to the assessor's valuation, we have never characterized such deference as a presumption in favor of the validity of the assessment which it is the plaintiff's burden to rebut." Stamford Apartments Co. v. Stamford, 203 Conn. 586, 589 (1987).
Plaintiffs' Application states the assessors valued their properties at $3,137,614. Testimony at trial showed the assessors had valued the property at $3,519,640. Plaintiffs' appraiser, F. Jerome Silverstein, has vast CT Page 1184 experience and is widely credentialed. He presented a report and testified that plaintiffs' properties were worth only $2,822,749, and, if a super lien were considered, only $2,630,099. He testified about, and his written report presented, a valuation as of October 1, 1988. Exhibit A. The valuation challenged in this case is that as of October 1, 1989. Application For Relief Against Excessive Tax Valuation, ¶ 1. There was no testimony relating or correlating the valuations as of October 1, 1988 and October 1, 1989.
The court has plaintiffs' appraiser's opinion of value. It differs markedly from the assessors' valuation. The City did not present any appraisal testimony. Neither party presented any evidence as to how the assessors arrived at their valuations. The court did not have any evidence to help it determine what valuation was correct or to determine if the assessors had made a mistake or mistakes. The court did not have the testimony of the assessors, or their appraiser(s), to weigh and balance against that of the plaintiffs' appraiser.
The court is uneasy with the opinion of the plaintiffs' appraiser. He testified the fair market value of the plaintiffs' properties was $2,822,749. There was some indication that six of the properties might be subject to a Superfund lien. If this were so, then the properties, according to plaintiffs' appraiser, would only be worth $2,630,099. There was uncertainty as to whether the properties were subject to Superfund lien(s). In any event, it was his view that the City's value was approximately 33% too high. Not surprisingly, he opined the assessment was "manifestly excessive."
The evidence clearly shows the properties are located in New London's "prime" commercial locale. The plaintiffs' appraiser valued the best land in this area at $10 per square foot. He did not value any of plaintiffs' land at $10 per square foot. Yet, Plaintiffs had received a buy offer on a part of one property; the offer was to buy 300,000 square feet for $500,000. That sale fell through when the buyer learned of certain environmental problems with the property. Nevertheless, this indicates that the price for "good" land in the area was over $16 per square foot, far more than the $10 per square foot used by CT Page 1185 plaintiffs' appraiser.
Plaintiffs' appraiser testified that the assessors used $10 per square foot as the fair market value of plaintiffs' land. He came to that conclusion by dividing the assessors' value by the number of square feet. He may be correct. However, the assessors value could have been a result of a composite. For example, if the a property had 10,000 square feet and the assessors valued it at $100,000, that does mean necessarily that the assessors valued all the square footage on that particular property at $10 per square foot. It may be the assessors valued 5,000 square feet at $15 per square foot and 5,000 square feet at $5 per square foot. This may be significant because, again according to plaintiffs' appraiser, the quality of the land on several of the plaintiffs' properties differed markedly. On many of the properties, he found the better part of the land to be worth $7 per square foot and the remainder to have only a nominal value of $.25 per square foot.
As stated above, plaintiffs' appraiser said the best land in the area was worth $10 per square foot. He found none of plaintiffs land to be worth that much. According to plaintiffs' appraiser, the best of plaintiffs' land was worth only $7 per square foot. He stated the land was worth only $7 per square foot because of subsoil conditions, the land had been filled with construction tailings and was not suitable in its current state for large scale building construction. He had nothing to show how much it would cost to remedy these conditions. Nevertheless, he, the court believes, arbitrarily reduced the value by $3 per square foot. His figure may be correct, but the court was not shown how he arrived at it.
Plaintiffs' appraiser found much of plaintiffs' land to be "wetlands." There was no evidence any of this land had been designated "wetlands" by any governmental agency. Plaintiffs' appraiser saw that the land was wet and therefore treated these areas as "wetlands." He valued these "wetlands" at $.25 per square foot. This seems very low. Even designated wetland have value. They can be used towards meeting area requirements in zoning. So too, there was no evidence that they were not available for development because they had been designated for protection as inland wetlands. The court does not accept plaintiffs' valuation. CT Page 1186
The plaintiffs have not sustained their evidentiary burden of proving that the assessors' valuation was incorrect. "There is no formula determining what is `manifestly excessive.'" See cases cited at Northeast Data,Inc. v. Wallingford, 212 Conn. 639, 650. There is of course a wide disparity between the plaintiffs' position on the properties' value, $2,822,749 and the assessors', $3,519,500. The court has not determined the valuation made by the assessors is "manifestly excessive."
Plaintiffs must also establish that the assessor's valuations were the product of their disregarding the provisions of the statutes for determining the valuation of the property. The court has had no evidence as to how the assessors made and/or arrived at their valuations. This critical element had to be proved and the burden of proving same was on the plaintiffs. Without any evidence of the method or manner by which the assessors made their valuations, the court cannot find that the assessors disregarded the provisions of the statutes for determining the valuation of the property.
Plaintiffs' case must fail. Judgment may enter for the defendant City of New London against the plaintiffs.
Parker, J.
A: Rogovin