[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff in this proceeding originally appealed from the action of the Hebron board of tax review (the Board) approving the assessor's valuation of the plaintiff's property on the decennial-revaluation list of October 1, 1993. The plaintiff late amended the original appeal by adding a count making the appeal apply to the list of October 1, 1994. Because the valuation in the 1994 list is same as that in the 1993 list, and because neither party claims that the valuation in the 1994 list should be different from that in the 1993 list, the court will consider both lists together, and the decision of the court will apply to both lists.
The plaintiff's original appeal is dated April 27, 1994. In that appeal, the plaintiff claims that the valuation that the assessor and the Board placed on her property for purposes of taxation by Hebron (Hebron's valuation) violates Conn. Gen. Stat. sec. 12-64. That statute provides that property not exempt from taxation shall be liable to taxation at a uniform percentage of "its present true and actual valuation." The plaintiff claims that Hebron's valuation grossly exceeds the "present true and actual valuation" of her property. By the provisions of Conn. Gen. Stat. sec. 12-63, the words "present true and actual valuation" mean "fair market value" and "not. . .value at a forced or auction sale." "The expressions `actual valuation,' `actual value,' `market value,' `market price' and, we add `fair CT Page 9406 value' are synonymous." Sibley v. Middlefield, 143 Conn. 100, 106120 A.2d 77 (1956). As required by statute, for purposes of local taxation Hebron has assessed property liable to taxation "at a uniform rate of seventy percent of present true and actual value."
The plaintiff's appeal has been referred to me, as a state trial referee, for a hearing and entry of judgment. In the course of the hearing, several exhibits were introduced, and the court heard testimony and received appraisals from two appraisers for the plaintiff and an appraiser for the defendant. The court, with others including counsel for the plaintiff and the defendant, also viewed from an automobile the twelve "comparables" cited in the reports of the appraisers; walked over the area of the plaintiff's land that is the subject of this appeal; and went through the interior of the plaintiff's dwelling situated on that land.
 I
The plaintiff's property, 9 Congress Drive includes: a lot measuring 2.10 acres; a split-level dwelling thereon with living space of 1512 square feet in the upper level and of 1176 square feet in the lower level; an inground, heated swimming pool, 20 feet by 40 feet; a pool house; and two one-story sheds, one 20 feet by 8 feet and the other, 16 feet by 8 feet. With reference to the age of the dwelling, the building department records of Hebron show: an inspection of the footings in November, 1984; a final inspection in June, 1985; and a Certificate of Occupancy issued in July, 1985. The court finds that the dwelling was constructed between October, 1984, and July, 1985, and that both appraisers for the plaintiff err in assuming in their appraisals that the dwelling was constructed in 1983.
In the upper level of the dwellings are five rooms and two baths, and in the lower level, four rooms and one bath. A two-car garage, approached by an asphalt driveway, is attached to the dwelling. A fair representation of the front of the dwelling appears in Exhibit 2; the court hereby incorporates that Exhibit into this Memorandum and makes it a part hereof. The lot has average landscaping, including several trees; is in a two-acre-lot zone; and is in a prime residential area.
II CT Page 9407
The assessors and the appraisers made the following valuations of the plaintiff's property:
 Hebron's Valuation of Land: $ 72.100 Hebron's Valuation of Dwelling: $117,160 Hebron's Valuation of outbuildings: $ 9,070 Total Hebron's Valuation: $198,330
 Appraisal by first of Plaintiff's appraisers, sales comparison approach $170,000 Appraisal by first of Plaintiff's appraisers, reproduction cost approach $179,389
 Appraisal by second of Plaintiff's appraisers, comparable sales approach $162,500 Appraisal by second of Plaintiff's appraisers, reproduction cost approach $171,605
 Appraisal by Defendant's appraiser, comparable sales approach $200,000 Appraisal by Defendant's appraiser, reproduction cost approach $198,330
 III
Our Supreme Court has said that the "`process of estimating the value of property for taxation is, at best, one of approximation and judgment, and there is a margin for a difference of opinion.' Burritt Mutual Savings Bank v. NewBritain, 146 Conn. 669, 675, 154 A.2d 608 (1959).`There may be more ways than one of estimating the value of such . . .(property) for taxation.' Bridgeport Brass Co. v. Drew,102 Conn. 206, 212, 128 A.2d 413 (1925.)" (Internal quotation marks omitted.) Carol Management Corp. v. Board of Tax Review,228 Conn. 23, 40, 633 A.2d 1368, (1993). That Court has also said, "At least four methods exist for determining the fair market value of property for taxation purposes: (1) analysis of comparable sales; (2) capitalization of gross income; (3) capitalization of net income; and (4) reproduction cost less depreciation and obsolescence." Second Stone Ridge CooperativeCorp. v. Bridgeport, 220 Conn. 335, 342, 597 A.2d 326 (1991).
As noted previously, all three appraisers made appraisals based on reproduction costs and sales of comparables. In their appraisals, the appraisers for the plaintiff refer to two kinds CT Page 9408 of depreciation: (1)physical and (2) functional. In discussing functional depreciation, our Supreme Court said, in Moss v. NewHaven Redevelopment Agency, 146 Conn. 421, 426, 151 A.2d 693
(1959), "It has come to be recognized that, in addition to depreciation in the form of structural depreciation resulting from wear and tear and other sources of physical deterioration, the element of depreciation usually referred to as functional depreciation frequently affects value because of obsolescence of the property or its loss of adaptability. . . Such an element of depreciation results from a change of neighborhood or from other extrinsic factors having a direct bearing on the value of the property. We have approved its use." To correlate Moss withSecond Stone Ridge, in this Memorandum this court will construe the words "reproduction cost less depreciation and obsolescence" in Second Stone Ridge as meaning "reproduction cost less physical and functional depreciation."
 IV
In his appraisal based on the sales of comparables, the plaintiff's first appraiser expressed the opinion that his Comparable #2, valued by him at $170,060, "is considered to be the best comparable sale" because it "is the same house and built by the same builder as the subject." The court does not concur in that opinion, however, primarily because that comparable is ten miles from the plaintiff's property and is even in a different town, Andover.
The court, rather, is of the opinion, and finds, that Comparable #3 (258 Old Colchester Road) of that same appraiser is the comparable with the most probative value, for the following reasons: Comparable #3 is in Hebron; it is the only comparable listed by all three appraisers, enabling the court to make one-on-one comparisons of each appraiser's adjustments; and its distance from the plaintiff's property is about 2.5 miles. The plaintiff's first appraiser valued Comparable #3, after computing his adjustments, at $172,158; the plaintiff's second appraiser, at $166,688; and the defendant's appraiser, at $198,168.
To show the adjustments that the court finds should be made to the sale price of Comparable #3 to evaluate the variations between that comparable and the plaintiff's property, the court has prepared the following schedule, listing the adjustments and the designated adjustment item: CT Page 9409
Sale price of Comparable #3 $147,218. Adjustments by plaintiff's first appraiser 24,940. Adjusted valuation of plaintiff's first appraiser 172,158 Add: Correction of for erroneous negative adjustment of $1500 in AGE adjustment[1] 1,500. Corrected adjusted valuation of Comparable #3 by plaintiff's first appraiser 173,658
Add: LOCATION Adjustment to the extent of $15,000 of LOCATION adjustment of defendant's appraiser ($20,000); in addition to $5,000 adjustment of plaintiff's first appraiser included in $24,940 above. (Comparable #3 significantly less desirable location than plaintiff's.) 15,000. Add: SITE adjustment by plaintiff's second appraiser. 2,500. Add: AGE adjustment by defendant's appraiser. 8,800.
Total of sale price of Comparable #3 plus adjustments. 199,958.
 V
Each of the plaintiff's appraisers included in his report a Cost Approach valuation, with a detailed schedule of reproduction cost items and depreciation. The schedule of the plaintiff's first appraiser showed a Cost Approach value of $179,389, including a valuation of the land at $60,000. The plaintiff's second appraiser showed a Cost Approach value of $171,605, including a valuation of the land at $65,000. (The court does not concur in either the $60,000 or $65,000 valuation of the land and concurs in the opinion of the assessor, and finds, that the value of the land is $72,100.) Because both of these Cost Approach valuations are lower than the assessor's valuation of the plaintiff's property, the court is of the opinion that it should address the results of the Cost Approach of the plaintiff's appraisers.
The plaintiff's first appraiser estimated the cost of the dwelling at $112,260, the pool, deck, and sheds, at $19,600, and the garage at $9,360, a total of $141,220; the court concurs in those cost estimates. From that total, the plaintiff's first appraiser deducted physical depreciation of $15,534 and functional depreciation of $11,297, a total depreciation of $26,831. This latter figure amounts to depreciation of 18.99% in the value of those structures in about only eight years. Some of CT Page 9410 that very high depreciation figure may be explained by that appraiser's error in assuming the dwelling was constructed in 1983, instead of 1985. Even allowing for that error, it is impossible to reconcile the physical depreciation amount with the statement in his report, "House shows average wear and tear. No deferred maintenance noted." Similarly, it is impossible to reconcile the high functional depreciation figure with the statement in his report "The subject neighborhood has good appeal. No adverse conditions noted."
The court is of the opinion, and finds, that the physical depreciation figure of $15,534 should be reduced by 25% to $11,650 to compensate for the error in assuming the house to have been constructed in 1983 and for the no-deferred-maintenance condition of the dwelling. The court is of the opinion, and finds, that the functional depreciation figure of $11,297 should be reduced to $7,000, the lower figure representing the functional depreciation of the sheds and the pool. The court finds no credible evidence to support a finding of functional depreciation in any other items.
The total depreciation, as found by the court, amounts to $18,650, a difference of $8,181 from the $26,831 total depreciation figure of the first appraiser of the plaintiff. This $8,181 increases the Indicated Value by the Cost Approach figure of the plaintiff's first appraiser ($179,389) to $187,570. To the latter figure, the court adds the $12,100 difference between the court's valuation of the land ($72,100) and the figure of $60,000 that the plaintiff's first appraiser used in his Cost Approach calculations; from these calculations, the court finds the Cost Approach valuation to be $199,670.
 VI
In Stamford Apartments Co. v. Stamford, 203 Conn. 586, 589,525 A.2d 1319 (1987), our Supreme Court said: "[W]hen a property owner challenges the assessor's valuation, `the plaintiffs' burden. . .is a difficult one. [P]roper deference must be given to the judgment and experience of assessors. Connecticut Coke Co.v. New Haven 169 Conn. 663, 668, 364 A.2d 178 (1975). The law contemplates that a wide discretion is to be accorded to assessors and their action is discriminatory or so unreasonable that property is substantially overvalued and thus injustice and illegality result, their opinion and judgment should control in the determination of value for taxation purposes.'" (Emphasis in original.) (Internal quotation marks omitted.) The property owner CT Page 9411 has "the burden to establish that the defendant's valuation was excessive." Stamford Apartments at 590. "The burden in such a proceeding as this, as in other actions, is upon the plaintiff to prove his material allegations." Thaw v. Fairfield, 132 Conn. 173,179, 43 A.2d 79 (1945).
The court is of the opinion, and finds, that the plaintiff has not sustained the burden of proving that the assessor's valuation substantially overvalued the plaintiff's property. Judgment may, therefore, enter for the defendant.
Rubinow, State Trial Referee