[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, The Milford Post Company, appeals the Milford Board of Tax Review's April 3, 1995 decision affirming the tax assessment of the plaintiff's real property following a fair hearing held pursuant to General Statutes § 12-111. The tax assessor determined that on October 1, 1994, the fair market value of the plaintiff's property was $486,100 ($288,800 for the land and $197,300 for improvements thereon).[1] The assessment for tax purposes was therefore determined to be $340,270 ($202,160 CT Page 86 for the land and $138,110 for the improvements).[2] The plaintiff claims that the Milford tax assessor overvalued its property, and thus, overassessed it for tax purposes.
 I.
The plaintiff appeals from the Board of Tax Review's decision pursuant to General Statutes § 12-117a.[3] "Section 12-117a, which allows taxpayers to appeal the decisions of municipal boards of tax review to the Superior Court, `provide[s] a method by which an owner of property may directly call in question the valuation placed by assessors upon his property. . . .'" (Internal quotation marks omitted.) Konover v. Town of West Hartford,242 Conn. 727, 734, ___ A.2d ___ (1997), quoting Second Stone RidgeCooperative Corp. v. Bridgeport, 220 Conn. 335, 339, 597 A.2d 326
(1991). The function of the trial court in such an appeal "is to determine the true and actual value of the plaintiff's property." (Internal quotation marks omitted.) Beacon Hill CondominiumAssoc. v. Beacon Falls, 41 Conn. App. 249, 253, 675 A.2d 909
(1996). The court's function is consistent with the goal of property valuation, which "is to determine the `present, true and actual value' of the subject property." First Bethel Associatesv. Bethel, 231 Conn. 731, 738, 651 A.2d 1279 (1995), quoting General Statutes § 12-62.[4]
"In a § 12-117a appeal, the trial court performs a two step function. The burden, in the first instance, is upon the plaintiff to show that he has, in fact, been aggrieved by the action of the board in that his property has been overassessed. . . . In this regard, mere overvaluation is sufficient to justify redress under [§ 12-117a], and the court is not limited to a review of whether an assessment has been unreasonable or discriminatory or has resulted in substantial overvaluation." (Citations omitted; internal quotation marks omitted; brackets omitted.) Konover v. Town of West Hartford, supra,242 Conn. 734-35. If the plaintiff alleges in its complaint that it is the owner of the subject property, was properly before the Board of Tax Review and received an adverse decision from the Board, the plaintiff has satisfied the aggrievement requirement. See Lerner Shops of Connecticut,Inc. v. Waterbury, 151 Conn. 79, 83, 199 A.2d 472
(1963). "If a taxpayer is found to be aggrieved by the decision of the board of tax review, the court tries the matter de novo and the ultimate question is the ascertainment of the true and actual value of the applicant's property." (Internal quotation marks omitted.)Konover v. Town of West Hartford, supra, 242 Conn. 735. "Whether CT Page 87 a property has been overvalued for tax assessment purposes is a question of fact for the trier. . . . The trier arrives at his own conclusions as to the value of land by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and his own general knowledge of the elements going to establish value including his own view of the property." (Citations omitted; internal quotation marks omitted.) Id.; see also Xerox Corp. v. Board of Tax Review,240 Conn. 192, 204, 690 A.2d 389 (1997). "Only after the court determines that the taxpayer has met his burden of proving that the assessor's valuation was excessive and that the refusal of the board of tax review to alter the assessment was improper, however, may the court then proceed to the second step in a §12-117a appeal and exercise its equitable power to grant such relief as to justice and equity appertains. . . . If the court finds that the property has been in fact overvalued, it has the power to, and should, correct the valuation." (Citations omitted; internal quotation marks omitted.) Konover v. Town of WestHartford, supra, 242 Conn. 735-36.
"Because a tax appeal is heard de novo, a trial court judge is privileged to adopt whatever testimony he reasonably believes to be credible. . . . This principle applies not only to the trial court's determination of the true and actual value of taxable property, but also to its determination of whether the plaintiff has satisfied the burden of establishing overvaluation." (Citations omitted; internal quotation marks omitted.) Sears, Roebuck and Co. v. Board of Tax Review,241 Conn. 749, 755-56, ___ A.2d ___ (1997). "[W]hen a property owner challenges the assessor's valuation, the plaintiffs' burden . . . is a difficult one. Proper deference must be given to the judgment and experience of assessors. . . . The law contemplates that a wide discretion is to be accorded to assessors, and unless their action is discriminatory or so unreasonable that property is substantially overvalued and thus injustice and illegality result, their opinion and judgment should control in the determination of value for taxation purposes. . . . While we have recognized that proper deference should be accorded to the assessor's valuation, we have never characterized such deference as a presumption in favor of the validity of the assessment which it is the plaintiff's burden to rebut." (Citations omitted; internal quotation marks omitted.)Stamford Apartments Co. v. Stamford, 203 Conn. 586, 589,525 A.2d 1327 (1987). CT Page 88
 II.
The plaintiff's property is within the territorial limits of Milford, Connecticut. The property consists of 0.86 of an acre located on the north side of the Boston Post Road. The property is improved with a one story wood frame and brick veneer commercial restaurant containing approximately 2,670 square feet.
The court heard testimony from the tax assessor for the City of Milford, for the defendant, and from an appraiser, for the plaintiff, concerning the value of the subject property, and has read the reports submitted by both of the parties. At the time the assessor and the appraiser prepared their respective reports, and at the time both parties testified before the court, the parties were in disagreement as to the approximate square footage of the building located on the subject property. The assessor based his calculation of the value of the property on a measurement of 2,755 square feet; the appraiser based his calculations on a measurement of 2,600 square feet. At the close of oral argument, the court directed the parties to arrange a joint measurement of the square footage of the building and submit a stipulation as to the agreed upon dimensions. Pursuant to that order, the parties subsequently entered a joint stipulation as to the dimensions of the building of 2,670 square feet.
The assessor conducted an independent appraisal of the subject property utilizing both the sales comparison approach and the income capitalization approach to valuation. The assessor did not analyze the property under the cost approach to valuation because the cost approach was already developed in the revaluation of the property, as indicated on the assessor's field card. The plaintiff's appraiser utilized both the cost approach and the income capitalization approach to valuation of the subject property, but did not develop the sales comparison approach because of "a paucity of comparable sales at the time of revaluation." See Plaintiff's Exhibit 3, at p. 4.
Under the sales comparison approach, the assessor reviewed sales of three similar properties in the City of Milford within the revaluation time frame, ranging in values per square foot from $134.41 to $186.36. The assessor concluded that, under this approach, the estimated value of the subject property was $180.00 per square foot, for a total valuation of $495,900.[5] Under the CT Page 89 income capitalization approach, the assessor determined that the appropriate capitalization rate was 10.28 percent; in the final calculation, the assessor determined that the estimated value of the subject property under this approach was $492,000. In reconciliation of these two valuation approaches, the assessor estimated that the final value of the subject property, as of October 1, 1991, was $493,000. Although the assessor's field card indicated a value of the subject property, as of October 1, 1991, of $486,100; see Defendant's Exhibit B; the assessor accepted this amount as the true and actual value of the subject property, even in light of his independent appraisal.
The plaintiff's appraiser first analyzed the subject property under the cost approach to valuation. Pursuant to this analysis, the appraiser determined the value of the property to be $360,000. In arriving at this figure, the appraiser took into account, inter alia, the value of the land and the historical cost of the improvements, reduced by depreciation for physical deterioration, functional obsolescence and external obsolescence. Like the assessor, the appraiser also conducted an analysis under the income capitalization approach to valuation. Pursuant to his analysis, the appraiser determined that the appropriate capitalization rate was 10.63 percent, and that the final estimated value of the property was $340,000 under this approach. In reconciliation of these two approaches, the appraiser determined that, as of October 1, 1991, the final true and actual value of the subject property was $350,000.
In reaching its own conclusion as to the proper true and actual value of the subject property as of October 1, 1991, the court concludes that the comparable sales approach to valuation is the most accurate estimate of valuation. In this light, the court finds the assessor's report and testimony credible; in contrast, the appraiser's lack of development of the comparable sales approach undermines the credibility of his report and testimony. Although the appraiser testified that he considered there to be a "paucity" of comparable sales so as to render the comparable sales approach of no use, the appraiser testified that this did not mean that there were no comparable sales; rather, the term "paucity" meant that there were not enough comparable sales to establish a market pattern. Moreover, the appraiser testified that he used comparable land sales in the town of West Haven for his cost approach analysis, and used comparable rentals in the town of Orange for his income capitalization approach analysis. The appraiser's testimony also revealed that he used CT Page 90 close to a two-year time period for his search area to locate comparable sales. The court finds it difficult to accept that a search of three towns in a two-year span of time would uncover an insufficient quantity of comparable sales to the subject property to render the comparable sales approach of no use.
The court further finds that numerous inconsistencies in the appraiser's report renders the assessor's credibility superior to that of the appraiser. For example, in the appraiser's report, the final valuation of the property under the cost approach was indicated, in the calculations section of the report, as $360,000 (rounded down from $361,851). See Plaintiff's Exhibit 3, at p. 12. In the narrative section of the report, however, the value under the cost approach was indicated as $355,000. See id., p. 4. In addition, in arriving at the final value of $350,000 for the subject property, the report indicated that of the $350,000 amount, $260,000 was allocated to land and $80,000 was allocated to the improvements. See id., p. 5. Because the two allocations did not add up to $350,000, rather, $340,000, the appraiser testified that the $80,000 amount allocated to the improvements was a misprint in the report and should have been $90,000. Finally, in his analysis under the income capitalization approach, the appraiser reduced the historical cost of the building located on the subject property by certain depreciation factors. One of the factors, depreciation for functional obsolescence, was included in the list, but no depreciation amount was deducted for this factor. See id., p. 12. In the narrative section of the report, however, the appraiser indicated that "although suffering from functional and external obsolescence[,] [the improvements] still contribute to the overall property value." (Emphasis added.) Id., p. 4.
In conclusion, the court finds the assessor's report and testimony to be credible, and his per square foot valuation of the property to be accurate. Because of the foregoing errors and inconsistencies in the appraiser's report, and because of the lack of development by the appraiser of the comparable sales approach to valuation of the property, the court therefore finds the assessor's valuation of the subject property to be more accurate and credible than the appraiser's valuation.
The assessor's final assessment of valuation must, however, be adjusted to take into account the assessor's erroneous calculation of the square footage of the building erected on the subject property. In a stipulation as to the appropriate square footage, the plaintiff's appraiser and the assessor agreed that CT Page 91 the structure measures 2,670 square feet, 85 square feet less than the 2,755 square foot measurement originally used in the assessor's calculations. Therefore, as adjusted, the fair market value of the subject property is $480,600 ($288,800 for the land and $191,800 for the improvements).
 III.
In conclusion, the court finds that, although the assessor's per square foot valuation of the plaintiff's property was correct, the property was overvalued by the tax assessor due to the miscalculation of the dimensions of the building located on the subject property. Pursuant to the stipulation by the parties of the correct square footage of the building, the court finds that the present, true and actual value of the plaintiff's property as of October 1, 1991, was $480,600. The defendant is therefore ordered to amend the 1994 assessment list and record the present, true and actual value of the plaintiff's property as $480,600. The assessed value shall be $336,420.
SO ORDERED:
Joseph H. Sylvester JUDGE OF THE SUPERIOR COURT