### F. W. WOOLWORTH COMPANY *v.* TOWN OF GREENWICH
### (15375)

Dupont, C. J., and Landau and Hennessy, Js.

Argued December 12, 1996—officially released March 18, 1997

*Eugene F. McLaughlin, Jr.*, assistant town attorney, for the appellant (defendant).

*Barry C. Hawkins*, with whom, on the brief, was *Jennifer Hauhuth*, for the appellee (plaintiff).

DUPONT, C. J. The assessor of the town of Greenwich valued the property of the plaintiff, including land and improvements, on the list of October 1, 1993, in the amount of $3,338,090. The plaintiff, thereafter, filed an application in the trial court to appeal from the board of tax review's failure to change the assessment, claiming in one count that the valuation was grossly excessive, disproportionate and unlawful and, in a second count, that the assessment was manifestly excessive. The defendant answered the complaint and counterclaimed, alleging that its assessments on the lists of 1993 and 1994 were erroneous because the property was undervalued and that the assessment should be increased to reflect the fair market value of the property. Shortly after the counterclaim was filed, the plaintiff withdrew its application to appeal. The sole issue of this appeal is whether the trial court properly dismissed the defendant's counterclaim for lack of subject matter jurisdiction after the plaintiff had withdrawn its application.

Subject matter jurisdiction is the power to adjudicate a particular controversy based on the general class of case in which the controversy belongs. *Tolly* v. *Dept. of Human Resources*, 225 Conn. 13, 29, 621 A.2d 719 (1993). The plaintiff's action was based on statutory causes of action. General Statutes §§ 12-117a and 12-119. The defendant claims that its counterclaim is also statutory and that, pursuant to § 12-117a, the trial court could increase, as well as reduce, the amount of a tax assessment. The defendant thus argues that its counterclaim is unaffected by the withdrawal of the plaintiff's application and can stand on its own.

A counterclaim is an independent action and, if it states a cause of action that is within the general class of case that a court has the power to hear, will continue unabated after the withdrawal of a plaintiff's action. See Practice Book § 169; *Union Carbide Corp.* v. *Aetna Casualty & Surety Co.*, 212 Conn. 311, 318, 562 A.2d 15 (1989).[1] The question to be resolved here, therefore, is whether the counterclaim alleges a type of case that the trial court had the statutory power to hear.[2]

We begin our discussion by first establishing what this appeal does not concern. The defendant claims that because the plaintiff sold the subject property for $12,500,000 in April, 1995, fewer than ten months after bringing its appeal, the assessor had grossly undervalued the property at $3,338,090. What a trial court, after a trial, might have found the value of the property to be for the tax year of 1993, does not, however, answer the question of whether the trial court had the authority or power to establish that value at the request of the defendant alone.

The defendant depends on the case of *Tucker* v. *Hartford*, 15 Conn. App. 513, 545 A.2d 584, cert. denied, 209 Conn. 807, 548 A.2d 444 (1988), and certain similar

[1] Practice Book § 169 provides: "The withdrawal of an action after a counterclaim, whether for legal or equitable relief, has been filed therein shall not impair the right of the defendant to prosecute such counterclaim as fully as if said action had not been withdrawn, provided that he shall, if required by the court, give bond to pay costs as in civil actions."

[2] The defendant claims that the power to hear this counterclaim rests on a distinction between compulsory and permissive counterclaims. At oral argument, the defendant agreed that a town cannot bring an independent action against a taxpayer to increase a tax assessment set by the town. The defendant, however, argues that we are dealing with a compulsory counterclaim that may be asserted in the absence of independent jurisdictional facts. The defendant claims that there is a distinction between permissive and compulsory counterclaims but cites no Connecticut authority that recognizes such a distinction. Further, he cites no relevant Connecticut authority that recognizes a distinction between a counterclaim that is ancillary to the main action but does not require independent jurisdictional

language found in both §§ 12-117a and 12-119 to support its theory that its counterclaim remained viable on its own.

In *Tucker*, an action brought by a taxpayer, the trial court increased the assessment made by a city in determining the market values of real estate. The trial court did not, however, do so at the request of the city. Furthermore, although the trial court had found market values to be higher than those established by the city assessor, the city did not change its original assessments, and the taxpayer continued to be taxed at the lower values originally set. Id., 517. A trial court, thus, has the power to determine an assessment value in an action brought by the taxpayer. The issue in this case, however, is not whether the power to determine an assessment includes the power to increase that value, but whether the trial court has the power to determine an assessment value in an action *brought by the town.*

An analysis of the language found both in § 12-117a and in § 12-119, on which the defendant relies, reveals that no statutory right of action is given a town to claim that its own assessment was manifestly "underexcessive" or that the town assessment list should be changed. Both of the statutes contain similar language. General Statutes § 12-117a provides in relevant part that "[t]he court shall have the power *to grant such relief* as to justice and equity appertains, upon such terms and in such manner and form as appear equitable . . . ." (Emphasis added.)[3] "The common definition of the word 'such' includes 'having a quality already . . . specified . . . of the sort . . . previously indicated or implied . . . previously characterized or specified'; and 'aforementioned.' " *Verrastro* v. *Sivertsen*, 188

grounds to survive the withdrawal of the main action and another type of counterclaim.

[3] The language of General Statutes § 12-119 is slightly different. It states that the court "shall have the power to grant such relief upon such terms and in such manner and form as to justice and equity appertains . . . ."

Conn. 213, 221 n.7, 448 A.2d 1344 (1982). Thus, the words "such relief" can refer only to the previously stated relief afforded by the statutes, namely, the right of a person who is bound to pay real property taxes and who claims to be aggrieved by the action of a board of tax review with regard to an assessment to appeal from that action; General Statutes § 17-117a; or to the remedy of an owner who claims that the tax was computed on an assessment that, under all the circumstances, was manifestly excessive. General Statutes § 12-119. Because the relief afforded by the statutes does not include a remedy for a town that has made an "underexcessive" assessment, the court has no power to grant such relief.

Not only is there no statutory authority that allows a town to question the value it has assessed on real estate in our trial courts, there is a statutory prohibition preventing assessors from changing an assessed valuation on an assessment list as compared to an immediately preceding assessment list solely on the basis of the sale price of the subject property.[4]

We conclude that if the plaintiff had never brought an action to question the assessment, the defendant could not have requested the trial court to change the assessment upward. We further conclude that the withdrawal of the plaintiff's application was not the cause of the dismissal of the defendant's counterclaim. Rather, it was the lack of subject matter jurisdiction over the defendant's counterclaim.

The judgment of dismissal is affirmed.

In this opinion the other judges concurred.

---

[4] General Statutes § 12-63d provides: "The assessor in any municipality may not, with respect to any parcel of real property in the assessment list for any assessment year, make a change in the assessed value of such parcel, as compared to the immediately preceding assessment list, solely on the basis of the sale price of such parcel in any sale or transfer of such parcel."