SIMON KONOVER *v.* TOWN OF WEST HARTFORD
(SC 15504)

Callahan, C. J., and Borden, Norcott, Katz and Peters, Js.

Argued May 29—officially released August 26, 1997

*Beth Critton*, assistant corporation counsel, for the appellant (defendant).

*Elliott B. Pollack*, with whom was *Marci J. Silverman*, for the appellee (plaintiff).

*Opinion*

CALLAHAN, C. J. The defendant, the town of West Hartford (town), appeals from the judgment of the trial court reducing the tax assessments levied upon the real property of the plaintiff, Simon Konover, on the grand lists of 1993, 1994 and 1995. The dispositive issue in this appeal is whether the trial court properly refused to include, in its determination of the fair market value of the plaintiff's property, the value of a portion of the property that the town's assessor mistakenly had failed to include in her valuation during the decennial revaluation of 1989. We conclude that, to determine whether the plaintiff's property had been overassessed, the trial court should have considered the value of the omitted

portion of the property in its calculation of the total fair market value of the property. We therefore reverse the judgment of the trial court and remand the case for a new trial.

The record reveals the following facts. The plaintiff is the fee owner of an improved parcel of land located at 2410 Albany Avenue in the town of West Hartford. The property consists of land and an office building. The plaintiff purchased the property in 1972, and uses it as the headquarters for his real estate development business. When the plaintiff purchased the property, its southwest corner extended to a public highway known as Shawmet Road. At that time, Shawmet Road was a dead end road that extended from Albany Avenue into the plaintiff's property and the adjoining property to the west of the plaintiff's property, which is currently owned by an entity known as Colonial Health Care Limited Partnership (Colonial). Shawmet Road served as an access road to the property of both the plaintiff and Colonial. The paved portion of the road was approximately twenty feet wide and 270 feet long. Shawmet Road had existed as a public highway since it was accepted by the town in 1928.

Following the 1989 decennial revaluation, the assessor determined the total area of the plaintiff's property to be 49,121 square feet and its fair market value to be $1,497,000. On the October 1, 1993 grand list, the assessor assessed the property in accordance with the 1989 valuation. The plaintiff, pursuant to General Statutes (Rev. to 1993) § 12-111,[1] appealed the assessment to the

[1] General Statutes (Rev. to 1993) § 12-111 provides in relevant part: "[A]ny person . . . claiming to be aggrieved by the doings of the assessors of such town may appeal therefrom to such board of tax review, which shall determine all such appeals and report in writing the final determination of such appeals to each such person within one week after such determination has been made. Such board may equalize and adjust the valuations and assessment lists of such town and may increase the items of taxable property in the list of any person, or the number, quantity or amount of any such

board of tax review for the town of West Hartford (board), which declined to reduce the assessment. Thereafter, the plaintiff appealed to the trial court pursuant to General Statutes § 12-117a.[2]

The case was tried to the court. During the trial, both the plaintiff and the town presented the testimony of

item, or add to any such list any taxable property or interest therein omitted by the assessors which should be added thereto; and may add to the assessment list the name of any person omitted by the assessors and owning taxable property in such town, and make a list for him, putting therein all property liable to taxation which it has reason to believe is owned by him, at the percentage of its actual valuation, as determined by the assessors in accordance with the provisions of sections 12-64 and 12-71, from the best information that it can obtain, and add thereto twenty-five per cent of such assessment; but, before proceeding to increase the list of any person or to add to the assessment list the name of any person so omitted, it shall mail to him, postage paid, at least one week before making such increase or addition, a written or printed notice addressed to him at the town in which he resides, to appear before such board and show cause why such increase or addition should not be made." In 1995, references to the board of tax review were changed to the board of assessment appeals. See Public Acts 1995, No. 95-283, § 50.

[2] General Statutes § 12-117a provides in relevant part: "Appeals from boards of tax review or boards of assessment appeals. Any person . . . claiming to be aggrieved by the action of the board of tax review or the board of assessment appeals, as the case may be, in any town or city may, within two months from the date of the mailing of notice of such action, make application, in the nature of an appeal therefrom, with respect to the assessment list for the assessment year commencing October 1, 1989, October 1, 1990, October 1, 1991, October 1, 1992, October 1, 1993, October 1, 1994, or October 1, 1995, and with respect to the assessment list for assessment years thereafter, to the superior court for the judicial district in which such town or city is situated, which shall be accompanied by a citation to such town or city to appear before said court. . . . If, during the pendency of such appeal, a new assessment year begins, the applicant may amend his application as to any matter therein, including an appeal for such new year, which is affected by the inception of such new year and such applicant need not appear before the board of tax review or board of assessment appeals, as the case may be, to make such amendment effective. The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable, and, if the application appears to have been made without probable cause, may tax double or triple costs, as the case appears to demand; and, upon all such applications, costs may be taxed at the discretion of the court.

experts who had appraised the property. It was the opinion of the town's expert, Edgar B. French, that, at the time of the 1989 decennial revaluation, the fair market value of the plaintiff's property was $1,550,000. The principal reason for the disparity between French's valuation and the assessor's 1989 valuation was that, during the course of his appraisal, French had discovered that in 1984, at the request of the plaintiff and Colonial's predecessor, the town council of West Hartford had passed a resolution, pursuant to General Statutes § 13a-49,[3] discontinuing Shawmet Road as a public highway. As a result of the town's discontinuance of Shawmet Road, approximately 8987 square feet of land owned

If the assessment made by the board of tax review or board of assessment appeals, as the case may be, is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes, together with interest and any costs awarded by the court, or, at the applicant's option, shall be granted a tax credit for such overpayment, interest and any costs awarded by the court. Upon motion, said court shall, in event of such overpayment, enter judgment in favor of such applicant and against such city or town for the whole amount of such overpayment, together with interest and any costs awarded by the court. The amount to which the assessment is so reduced shall be the assessed value of such property on the grand lists for succeeding years until the tax assessor finds that the value of the applicant's property has increased or decreased."

[3] General Statutes § 13a-49 provides: "Discontinuance of highways or private ways. The selectmen of any town may, subject to approval by a majority vote at any regular or special town meeting, by a writing signed by them, discontinue any highway or private way, or land dedicated as such, in its entirety, or may discontinue any portion thereof or any property right of the town or public therein, except when laid out by a court or the General Assembly, and except where such highway is within a city, or within a borough having control of highways within its limits. Any person aggrieved may be relieved by application to the Superior Court, to be made and proceeded with in the manner prescribed in section 13a-62. Whenever a petition has been presented to the selectmen for such discontinuance or partial discontinuance of any land dedicated as a highway or private way but which has not been actually used, worked or accepted, as a highway, by the town, and such discontinuance or partial discontinuance has not been made by the selectmen and approved by the town within twelve months after such presentation, any person aggrieved may be relieved by application to said court, to be made and proceeded with in the manner prescribed in section 13a-62."

by the plaintiff, and occupied by one half of Shawmet Road, had been discharged of the easement that had existed for a public highway since 1928. In addition, French discovered that the town's discontinuance of Shawmet Road had freed of the public easement the portion of the land occupied by Shawmet Road that was owned by Colonial's predecessor.

Shortly after the town's discontinuance of Shawmet Road, the plaintiff and Colonial's predecessor deeded each other cross easements over their respective portions of the land formerly occupied by Shawmet Road. Pursuant to the easement agreement, the plaintiff granted Colonial's predecessor a private easement over the 8987 square feet of land owned by the plaintiff that had been discontinued as a public highway. Similarly, Colonial's predecessor granted the plaintiff a private easement over the area of land owned by Colonial's predecessor that had been freed of the public easement. In the easement agreement, the portion of the land formerly occupied by Shawmet Road that was owned by the plaintiff was referred to as easement area B, and the portion that was owned by Colonial's predecessor was referred to as easement area A. For purposes of clarity, hereinafter, we will refer to these respective areas as either easement area B or easement area A. The plaintiff and Colonial currently use the two areas as a driveway and parking lot. Easement area B comprises approximately 15 percent of the total land area of the plaintiff's property.

When the assessor valued the plaintiff's property at the time of the 1989 revaluation, the assessor was not aware of the town's 1984 discontinuance of Shawmet Road, or of the easement agreement between the plaintiff and Colonial's predecessor. As a result, the assessor valued the plaintiff's property on the basis of the configuration of the property prior to the discontinuance of Shawmet Road. In other words, in valuing the property

at $1,497,000, the assessor did not include any value for easement area B, although in 1989 that area belonged to the plaintiff free of the public easement, the reason being that the assessment map and property record cards used by the assessor for purposes of the 1989 valuation failed to disclose the town's 1984 discontinuance of Shawmet Road as a public highway. According to the assessment map and the property record cards extant in 1989, the total land area of the plaintiff's property amounted to only 49,121 square feet. Indeed, the assessor became aware of the discontinuance of Shawmet Road only during the course of this litigation.

In determining the total fair market value of the plaintiff's property, French included an estimate of the value of easement area B.[4] French arrived at that value by multiplying the square footage of the land by what he determined to be the fair market value per square foot of land in the area of West Hartford in which the property was located. He determined that value to be $15.11 per square foot. He then concluded that the value of the 8987 square feet of land comprising easement area B was $135,794 (8987 square feet x $15.11 per square foot = $135,793.57). He testified that the total land area of the plaintiff's property, including the 8987 square feet of the discontinued highway, was 58,108 square feet.

The plaintiff's expert, Edward F. Heberger, testified that in his opinion the fair market value of the plaintiff's property at the time of the 1989 decennial revaluation was $1,200,000. In making this determination, Heberger operated on the belief that the total land area of the property in 1989 amounted to 49,121 square feet. Thus, in valuing the property, Heberger, like the assessor in 1989, did not include any value for easement area B.

---

[4] In determining the total value of the plaintiff's property, French did not account, however, for the plaintiff's easement over easement area A or Colonial's easement over easement area B.

The trial court, after hearing all the evidence, rendered judgment in favor of the plaintiff. The court determined that the fair market value of the plaintiff's property was $1,300,000, and ordered the assessor to reduce the plaintiff's assessments accordingly. In determining the fair market value of the plaintiff's property, the court refused to consider any value for easement area B. The town appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

The principal issue presented is a question of first impression, the resolution of which requires us first to clarify the function of the trial court in a § 12-117a appeal. Section 12-117a, which allows taxpayers to appeal the decisions of municipal boards of tax review to the Superior Court, " 'provide[s] a method by which an owner of property may directly call in question the valuation placed by assessors upon his property . . . .' " *Second Stone Ridge Cooperative Corp.* v. *Bridgeport*, 220 Conn. 335, 339, 597 A.2d 326 (1991); *Northeast Datacom, Inc.* v. *Wallingford*, 212 Conn. 639, 650, 563 A.2d 688 (1989); see also *E. Ingraham Co.* v. *Bristol*, 146 Conn. 403, 408–409, 151 A.2d 700 (1959), cert. denied, 361 U.S. 929, 80 S. Ct. 367, 4 L. Ed. 2d 352 (1960); *Cooley Chevrolet Co.* v. *West Haven*, 146 Conn. 165, 166, 148 A.2d 327 (1959). In a § 12-117a appeal, the trial court performs a two step function. "The burden, in the first instance, is upon the plaintiff to show that he has, in fact, been aggrieved by the action of the board in that his property has been overassessed." *Gorin's, Inc.* v. *Board of Tax Review*, 178 Conn. 606, 608, 424 A.2d 282 (1979); *O'Brien* v. *Board of Tax Review*, 169 Conn. 129, 131, 362 A.2d 914 (1975). In this regard, " '[m]ere overvaluation is sufficient to justify redress under [§ 12-117a], and the court is not limited to a review of whether an assessment has been unreason-

able or discriminatory or has resulted in substantial overvaluation.' " *Newbury Commons Ltd. Partnership* v. *Stamford*, 226 Conn. 92, 104, 626 A.2d 1292 (1993); *O'Brien* v. *Board of Tax Review*, supra, 130–31; see also *Hutensky* v. *Avon*, 163 Conn. 433, 436–37, 311 A.2d 92 (1972). "Whether a property has been overvalued for tax assessment purposes is a question of fact for the trier." *Newbury Commons Ltd. Partnership* v. *Stamford*, supra, 104. "The trier arrives at his own conclusions as to the value of land by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and his own general knowledge of the elements going to establish value including his own view of the property." *O'Brien* v. *Board of Tax Review*, supra, 136.

Only after the court determines that the taxpayer has met his burden of proving that the assessor's valuation was excessive and that the refusal of the board of tax review to alter the assessment was improper, however, may the court then proceed to the second step in a § 12-117a appeal and exercise its equitable power to "grant such relief as to justice and equity appertains . . . ." See *Gorin's, Inc.* v. *Board of Tax Review*, supra, 178 Conn. 608; *O'Brien* v. *Board of Tax Review*, supra, 169 Conn. 131; see also *Newbury Commons Ltd. Partnership* v. *Stamford*, supra, 226 Conn. 104; *Hutensky* v. *Avon*, supra, 163 Conn. 436–37; *Hartford Hospital* v. *Board of Tax Review*, 158 Conn. 138, 148, 256 A.2d 234 (1969); *National Folding Box Co.* v. *New Haven*, 146 Conn. 578, 585, 153 A.2d 420 (1959); *Underwood Typewriter Co.* v. *Hartford*, 99 Conn. 329, 332–33, 122 A. 91 (1923); *Ives* v. *Goshen*, 65 Conn. 456, 459–60, 32 A. 932 (1895). "If a taxpayer is found to be aggrieved by the decision of the board of tax review, the court tries the matter de novo and the ultimate question is the ascertainment of the true and actual value of the applicant's property." *O'Brien* v. *Board of Tax Review*,

supra, 131. "If the court finds that the property has been in fact overvalued, it has the power to, and should, correct the valuation." *Hutensky* v. *Avon*, supra, 437.

Section 12-117a provides a remedy only for an aggrieved taxpayer seeking to reduce his tax assessment. It provides no remedy for a municipality claiming to have undervalued a taxpayer's property. See *F. W. Woolworth Co.* v. *Greenwich*, 44 Conn. App. 494, 497–98, 690 A.2d 405 (1997).

The first step that the trial court should have taken in deciding the plaintiff's appeal, therefore, was to determine whether the plaintiff was aggrieved by the decision of the board, on the grounds that his property had been overassessed and the board improperly had refused to reduce the assessments. In making that determination, it was necessary for the trial court to arrive at a preliminary conclusion concerning the fair market value of the plaintiff's property. The question of whether the total land area of the plaintiff's property on the valuation and assessment dates was 49,121 square feet or 58,108 square feet was a subsidiary fact question that was an essential predicate to the ultimate question of whether the plaintiff's property had been overassessed. It was also an issue that was not disputed by either party. Both the plaintiff and the town agreed that on the dates in question the total land area of the plaintiff's property, including easement area B, was 58,108 square feet, but that the area valued by the assessor in 1989 was only 49,121 square feet. Nevertheless, when valuing the property for the purpose of determining whether the plaintiff had been overassessed, the trial court refused to consider any value for easement area B.

We conclude that the trial court, when determining whether the plaintiff had been overassessed pursuant to § 12-117a, should have valued the plaintiff's property

on the basis of the actual land area owned by the plaintiff on the date of valuation, rather than on the basis of an erroneous description of the property in the tax maps and property record cards in the possession of the assessor when she valued the property in 1989. By refusing to include any value for easement area B in its determination of the fair market value of the plaintiff's property, the trial court valued a fictional piece of property. Instead of determining whether the plaintiff's property, as it actually existed on the date of the revaluation, had been overassessed, the trial court, in effect, determined that only a part of the plaintiff's property had been overassessed. We have never held that a trial court in a de novo appeal pursuant to § 12-117a may determine the value of only a portion of a taxpayer's property.

The plaintiff makes two alternative arguments in support of the trial court's approach in the present case, neither of which are persuasive. The plaintiff first claims, in essence, that the trial court lacked subject matter jurisdiction to consider easement area B when determining the fair market value of the plaintiff's property. Essentially, he argues that the assessor never assessed easement area B in the first instance because the tax maps and property record cards used by the assessor for valuation purposes in 1989 did not attribute the ownership of easement area B to the plaintiff. The plaintiff argues that because the assessor never assessed easement area B, and never raised the issue with the board, easement area B was not a part of the appeal filed by the plaintiff with the board. Furthermore, he contends that because § 12-117a limits the class of persons who may appeal from the board to the Superior Court to persons "aggrieved by the action of the board," and, because, according to the plaintiff, the board took no "action" with respect to easement area

B, easement area B was not a part of the appeal filed by the plaintiff with the trial court. In addition, the plaintiff asserts that General Statutes §§ 12-53[5] and 12-

[5] General Statutes § 12-53 provides in relevant part: "Addition of omitted property to list. (a) During the period prescribed by law for the completion of their duties the assessor or board of assessors of each town shall add to the list given in by any person and made according to law any taxable property which they have reason to believe is owned by him and has been omitted from such list, and property so added shall be assessed at the percentage of the actual valuation thereof, as determined by the assessor or board of assessors in accordance with the provisions of sections 12-63, 12-64 and 12-71, from the best information the assessor or board of assessors can obtain, and twenty-five per cent of such assessment shall be added thereto. The assessor or board of assessors shall notify such person, in accordance with section 12-55, of any such increase in the assessed valuation.

"(b) If the assessor or board of assessors of any town believe that taxable property has been omitted from the list given in by any person or that taxable property belongs to any person who has not given in a list, or if the assessor or board of assessors are unable to determine the value of any property without the assistance of the owner, custodian or other person having knowledge of the same, they may give notice in writing to the owner, custodian or other person having knowledge of any such property or the valuation thereof, of the time and place of a hearing with respect thereto. Such notice shall, within three years after the due date for the filing of such list or within three years after the date on which such list is received by the assessor or board of assessors, if later, be placed in the hands of such person or left at his usual place of residence or business or shall be sent to him by registered or certified mail at his last-known place of residence or business. Such notice shall direct the person named therein to appear before the assessor or board of assessors with books of account, papers, documents and other records for examination under oath relative to any such property or the valuation thereof. All omitted taxable property, discovered at such hearing or any adjournment thereof and not listed by the owner as required by law, shall be added to his list by such assessor or board of assessors at the percentage of its actual valuation, as determined by the assessor or board of assessors in accordance with the provisions of sections 12-63, 12-64 and 12-71, and twenty-five per cent of such assessment shall be added thereto. Subject to the provisions of sections 12-57 and 12-129, if any property is discovered at such hearing or any adjournment thereof to be listed in error by the owner, it shall be removed from such owner's list by the assessor or board of assessors. No person shall be excused from giving testimony or producing books of account, papers, documents and other records on the ground that such testimony and such production of documents will tend to incriminate him, but such testimony and such production of documentary evidence shall not be used in any criminal proceeding

$60^6$ are the exclusive statutory means by which an assessor may revalue and reassess a taxpayer's property in the years between decennial revaluations. The plaintiff

against him. Any person who fails to appear at the time and place of such hearing in such notice designated or at any adjournment thereof, or, having appeared, refuses to answer any pertinent question put to him or who fails to produce the books, papers or other documents mentioned in such notice, shall be fined not more than one hundred dollars or imprisoned not more than thirty days or both. All property which the assessor or board of assessors believes should have been listed for taxation and was not listed and concerning which sufficient information cannot be obtained by them at such hearing, or any adjournment thereof, shall be added to the list at such percentage of the actual valuation thereof from the best information obtainable by the assessor or board of assessors and twenty-five per cent shall be added to such assessment.

"(c) If the assessor or board of assessors of any town adds property to the list of any person or makes out a list for any person not filing a list or increases or decreases the valuation of any taxable property under the provisions of subsection (b), they shall, within thirty days of such hearing or any adjournment thereof give him notice thereof in writing by mailing the same, postage prepaid, to his last-known address and the same shall be held to be sufficient.

"(d) Any person claiming to be aggrieved by the action of the assessor or board of assessors under this section may appeal the doings of the assessor or board of assessors to the board of assessment appeals and the Superior Court as otherwise provided in this chapter, provided such appeal shall be extended in time to the next succeeding board of assessment appeals if the statutory period for the meeting of such board has passed. . . ."

[6] General Statutes § 12-60 provides in relevant part: "Correction of clerical error in assessment. Any clerical omission or mistake in the assessment of taxes may be corrected according to the fact by the assessors or board of assessment appeals, not later than three years following the tax due date relative to which such omission or mistake occurred, and the tax shall be levied and collected according to such corrected assessment. In the event that the issuance of a certificate of correction results in an increase to the assessment list of any person, written notice of such increase shall be sent to such person's last-known address by the assessor or board of assessment appeals within ten days immediately following the date such correction is made. . . . Any person claiming to be aggrieved by the action of the assessor under this section may appeal the doings of the assessor to the board of assessment appeals as otherwise provided in this chapter, provided such appeal shall be extended in time to the next succeeding board of assessment appeals if the meetings of such board for the grand list have passed. Any person intending to so appeal to the board of assessment appeals may indicate that taxes paid by him for any additional assessment added in accordance with this section, during the pendency of such appeal, are paid

argues that the assessor's failure to utilize §§ 12-53 and 12-60 precluded the trial court from considering easement area B when determining whether the plaintiff had been overassessed.

The plaintiff's arguments misperceive the tax assessment process, the nature and scope of the trial court's review in a § 12-117a appeal, and the concept of subject matter jurisdiction. First, the plaintiff's argument places too much emphasis on the tax maps and property record cards in the possession of the assessor. The fact that the assessor, at the time of the valuation in 1989, did not realize, because of an error in her maps and records, that the property owned by the plaintiff and subject to taxation actually amounted to 58,108 square feet, not 49,121 square feet, does not mean that the assessor did not assess the property actually situated at 2410 Albany Avenue. Rather, the assessor simply failed to include easement area B in its valuation of 2410 Albany Avenue in the 1989 revaluation. Although that mistake may have resulted in an undervaluation,[7] it did not deprive either the board or the trial court of subject matter jurisdiction to consider easement area B when determining whether the plaintiff's property had been overassessed.

"Jurisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . . A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy. . . . It is a familiar principle that a court which

'under protest' and thereupon such person shall not be liable for any interest on the taxes based upon such additional assessment, provided (1) such person shall have paid not less than seventy-five per cent of the amount of such taxes within the time specified or (2) the board of assessment appeals reduces valuation or removes items of property from the list of such person so that there is no tax liability related to additional assessment."

[7] We express no opinion on whether the assessor's mistake did result in an undervaluation of the plaintiff's property. That question of fact must be decided by the trial court on remand.

exercises a limited and statutory jurisdiction is without jurisdiction to act unless it does so under the precise circumstances and in the manner particularly prescribed by the enabling legislation." (Internal quotation marks omitted.) *Figueroa* v. *C & S Ball Bearing*, 237 Conn. 1, 4, 675 A.2d 845 (1996). Section 12-117a empowers the trial court to hear and determine appeals by taxpayers claiming that their property has been overassessed. See footnote 2 of this opinion. As previously noted, the trial court's initial function in such an appeal is to determine whether the taxpayer is aggrieved by the board's action, on the grounds that the taxpayer has been overassessed and the board improperly has refused to reduce the assessment. See, e.g., *Gorin's, Inc.* v. *Board of Tax Review*, supra, 178 Conn. 608. The scope of a trial court's subject matter jurisdiction in such an appeal must encompass the power to consider any facts that are relevant to determining whether a taxpayer actually has been overassessed. Certainly, the presence of more land than had been valued in the revaluation was a factor to consider in making such a determination. The trial court, therefore, could consider the value of easement area B in determining whether the plaintiff's property had been overassessed.

In addition, we note that the trial court's power to consider easement area B in determining whether the plaintiff's property had been overassessed was not affected by the fact that the assessor had not raised the question of easement area B at the hearing before the board. As we have stated on numerous occasions, in a § 12-117a appeal, the trial court tries the matter de novo. See, e.g., *Xerox Corp.* v. *Board of Tax Review*, 240 Conn. 192, 204, 690 A.2d 389 (1997). In a de novo proceeding, the trier of fact makes an independent determination of the matters on which the appeal was taken without regard for the action or decision of the lower tribunal. See *Andrews* v. *Gorby*, 237 Conn. 12,

14, 16–17, 675 A.2d 449 (1996); *Prince* v. *Sheffield*, 158 Conn. 286, 294, 259 A.2d 621 (1969); *Orange Street Armory Associates, Inc.* v. *New Haven*, 17 Conn. App. 166, 171, 551 A.2d 759 (1988). The question of whether the plaintiff had been overassessed was a question of fact to be determined de novo by the trial court. We do not agree with the plaintiff that in making that de novo determination the trial court was prevented from considering the value of easement area B simply because the issue had not been raised with the board.[8] The plaintiff was well aware when he appealed to the trial court pursuant to § 12-117a that the proceeding would be de novo, and not based on any record of the proceedings before the board.

Furthermore, we conclude that the assessor's failure to utilize §§ 12-53 or 12-60 to alter the plaintiff's assessment did not affect the trial court's power to consider easement area B when determining whether the plaintiff had been overassessed. Even if we assume that the

[8] The plaintiff does not dispute that the board, pursuant to § 12-111, had the power to consider easement area B when evaluating the plaintiff's appeal. Section 12-111 provides that "[the] board may equalize and adjust the valuations and assessment lists of such town and may increase the items of taxable property in the list of any person, or the number, quantity or amount of any such item, or add to any such list any taxable property or interest therein omitted by the assessors which should be added thereto . . . ." Thus, if the assessor's mistake with respect to easement area B had been realized at the time the plaintiff appealed to the board, the board would have had the power, pursuant to § 12-111, to alter the valuation and assessment of the plaintiff's property accordingly. Given such a hypothetical scenario, in which the question of easement area B had been raised in the appeal to the board and the board either altered or declined to alter the assessment, the trial court, in deciding an appeal, would have the power to consider easement area B in determining whether the plaintiff had been overassessed. In such a scenario, according to the plaintiff's argument, the board would have taken "action" with respect to easement area B, therefore making easement area B part of the appeal to the trial court. It would contravene the concept of de novo review, however, to assert that the trial court's power to consider easement area B was dependent on whether easement area B had been raised before the board.

plaintiff is correct that §§ 12-53 and 12-60 constitute the exclusive means by which an assessor may increase the valuation and assessment of a taxpayer's property between revaluations, permitting the trial court to consider the value of easement area B in determining whether the plaintiff has been overassessed is not equivalent to allowing the assessor to revalue and reassess the plaintiff's property pursuant to §§ 12-53 or 12-60. See footnotes 5 and 6 of this opinion. Section 12-117a provides a remedy for a taxpayer who has been overassessed. If, after including the value of easement area B, the trial court determines that the plaintiff has not been overassessed and, thus, is not aggrieved by the action of the board in refusing to reduce the assessment, the trial court must dismiss the appeal. The court's judgment cannot result in an increase in the plaintiff's assessment.[9]

The plaintiff next argues, in the alternative, that if the trial court had the power to include the value of easement area B in its determination of the value of the plaintiff's property, § 12-117a mandates that such power was discretionary in nature. We disagree. When construing statutes, "we will avoid constructions that lead to absurd, unworkable or bizarre results." *In re Flanagan*, 240 Conn. 157, 183, 690 A.2d 865 (1997); see also *State* v. *Morales*, 240 Conn. 727, 736–37, 694 A.2d 758 (1997). We conclude that such a construction of § 12-117a would lead to absurd and bizarre results and would be contrary to common sense and established

[9] Any concern that our decision might be construed to infringe upon the plaintiff's due process right to notice and a meaningful hearing before the board, we believe, is misplaced. After notice, affording the plaintiff a trial de novo would seem to alleviate any due process problem, particularly in view of the fact that, pursuant to our interpretation of § 12-117a, the trial court does not have the statutory authority to increase the taxpayer's assessment. The trial court, rather, simply determines whether the assessment of the taxpayer's property was excessive. In any event, the plaintiff did not brief a due process claim.

precedent. In a § 12-117a appeal, " 'the ultimate question is the ascertainment of the true and actual value of the [taxpayer's] property.' " *Newbury Commons Ltd. Partnership* v. *Stamford,* supra, 226 Conn. 104, quoting *O'Brien* v. *Board of Tax Review,* supra, 169 Conn. 131. If we were to accept the plaintiff's argument, essentially we would be validating a system in which trial courts would have the discretion to determine the true and actual value of hypothetical parcels of real estate that do not exist. For example, if the assessor's tax maps and records mistakenly had depicted the taxpayer's property as containing more square footage of land than the taxpayer, in reality, owned, the trial court, under the plaintiff's interpretation of § 12-117a, would have the discretion to disregard reality and value the taxpayer's property on the basis of the erroneous tax maps. Such a result certainly would be inappropriate because the trial court's function in a § 12-117a appeal is to determine whether the taxpayer's existing property has been overassessed. Although § 12-117a provides the trial court with broad equitable powers to grant relief to a taxpayer once the court is persuaded that the taxpayer has carried his burden of proving that he has been overassessed; see, e.g., *Gorin's, Inc.* v. *Board of Tax Review,* supra, 178 Conn. 608; § 12-117a does not provide the trial court with the discretion to ignore reality and to value the plaintiff's property on the basis of tax maps and records that obviously are incorrect. We conclude that the actual size of the taxpayer's property was a factor that should have been considered by the trial court in estimating its value.

In sum, we conclude that the trial court, when determining whether the plaintiff had been overassessed, should have considered the value of easement area B in its determination of the fair market value of the plaintiff's property. Because of our resolution of

this issue, we need not address the other issues raised by the town in its brief.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.