[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by the plaintiff, Old Hill Limited Partnership, pursuant to General Statutes §§ 12-117a,[1] from a decision of the defendant town of Westport board of tax review (board). The limited partnership was converted in 1996 to a limited liability company, Old Hill Offices, LLC, which then was substituted as plaintiff. The plaintiff owns land and improvements at 19 Ludlow Road and 120 Post Road West in Westport, consisting of two separate office buildings located on 2.26 acres. Both buildings have two and a half floors of office space, and both are approximately 14,000 square feet. Construction was completed in 1990, five years after the last decennial revaluation of October 1, 1985, in Westport. See General Statutes § 12-62 (a).
The tax assessor of the town of Westport[2] (assessor) determined that the assessed value of the plaintiff's s property on October 1, 1993, was $3,363,890 ($1,172,620 for the land and $2,191,270 for the two office buildings and outbuildings). This translated to a fair market value of $4,805,557 ($1,675,171 land and $3,130,386 improvements).[3]
Under the authority of General Statutes § 12-111, the plaintiff appealed this assessment to the defendant board, which denied its request to reduce the assessment. An appeal to this court followed, as authorized by General Statutes § 12-117a. The plaintiff subsequently revised its complaint to appeal the assessed valuations on the lists of October 1, 1994, October 1, 1995, October 1, 1996, and October 1, 1997. General Statutes § 12-117a.
General Statutes § 12-63 provides that the standard for determining fair market value is the property's "present true and actual value" and "not its value at a forced or auction sale." Fair market value is defined as "the value that would be fixed in fair negotiations between a desirous buyer and a willing seller, neither under any undue compulsion to make a deal." (Internal CT Page 7493 quotation marks omitted.) Uniroyal, Inc. v. Board of Tax Review,174 Conn. 380, 390, 389 A.2d 734 (1978).
The plaintiff's expert witness, D. P. Fugitt, an appraiser, testified that (1) an adjacent parcel at 170 Post Road East, in the same zone in which the subject premises is located, was valued by the assessor at $55 per square foot, whereas the plaintiff's property was valued at $65 per square foot: (2) the value of the subject premises was decreased by poor access because the portion of the property at 19 Ludlow Road can be reached only by driving through an adjacent residential condominium development; (3) the topography of the plaintiff's property is hilly; (4) he used three methods, capitalization of net operating income, replacement cost, and comparable sales of three commercial properties to arrive at fair market value; (5) all three methods led him to conclude that the fair market value of the subject premises, as of October 1, 1993, was $2,600,000; (6) this latter figure should be "trended back" to October 1, 1985, the last revaluation date in Westport, in accordance withNewbury Commons Limited Partnership v. Stamford, 226 Conn. 92,103, 626 A.2d 1292 (1993); and (7) using a ratio of 66.64% for average sales to assessments would results in a fair market value as of October 1, 1985, of $1,732,640.
The defendant board's witness, Kenneth Carvel, town of Westport assessor, testified that he used the "comparable sales" approach to substantiate his individual determination of the value of each building in Westport. He developed a "matrix" or schedule by comparing actual sales to assessments, and then factored in a number of variables including size, quality of construction, and location. In this particular case, using what the witness described as a market adjusted cost approach, he determined that the fair market value of the subject premises was $4,805,570 as of October 1, 1993.
Just this past summer, the Supreme Court indicated it would "clarify the function of the trial court in a § 12-117a
appeal." The court made the following points: (1) the plaintiff has the burden of showing that "he has, in fact, been aggrieved . . . in that his property has been overassessed;" (2) "mere overvaluation," and not "whether an assessment has been unreasonable or discriminatory or has resulted in substantial overvaluation," suffices for relief under the statute; (3) whether a property has been overvalued "is a question of fact for the trier;" and (4) if the court determines that the taxpayer is CT Page 7494 aggrieved because the valuation was excessive, the next step is to try "the matter de novo and the ultimate question is the ascertainment of the true and actual value of the applicant's property." (Internal quotation marks and citations omitted.)Konover v. West Hartford, 242 Conn. 727, 734-35, 699 A.2d 158
(1997).[4]
"[A]t least four methods exist for determining the fair market value of property for taxation purposes: (1) analysis of comparable sales; (2) capitalization of gross income; (3) capitalization of net income; and (4) reproduction cost less depreciation and obsolescence . . . See also General Statutes § 12-63b. Each of these is an approved method of ascertaining the actual value of real estate for purposed of taxation." CarolManagement Corp. , 228 Conn. 23, 36 n. 15, 633 A.2d 1368 (1993). Although all of these methods have been approved for valuing property, comparing market sales is ordinarily the best method for determining actual value. Uniroyal, Inc. v. Board of TaxReview, supra, 174 Conn. 385-86; see also Burritt Mutual SavingsBank v. New Britain, 146 Conn. 669, 674, 154 A.2d 608 (1959) ("[t]he best test for the determination of value is ordinarily that of market sales").
The evidence in this present action indicates that the plaintiff purchased the subject premises on September 10, 1993, just a few weeks before the assessment date of October 1, 1993, from the Federal Deposit Insurance Corporation (FDIC), as receiver of the New Connecticut Bank and Trust Company, for $2,700,000. There was no proof by the defendant and not even a suggestion that this sale by the FDIC to the plaintiff was anything other than an arm's length transaction. The actual sales price occurring just a few weeks before the assessment date is an accurate indication of fair market value according to Tyler'sCove Association, Inc. v. Middlebury, 44 Conn. App. 517, 525,690 A.2d 412 (1997), which described the sales price as "persuasive evidence" of fair market value.
Following the procedure outlined by Konover v. West Hartford, supra, 242 Conn. 736, the court as a "first step" makes a "preliminary conclusion" that the property has been overassessed in that the assessor found a market value of $4,805,557 just 20 days after the plaintiff purchased the property in an arm's length transaction for $2,700,000. Thus, the plaintiff is aggrieved because its property was overvalued and the board refused to correct the assessment. Id., 741. The "second step" CT Page 7495 for this court is to proceed to "exercise its equitable power to grant such relief as to justice and equity appertains." (Internal quotation marks omitted.) Id., 735.
Both parties agree that the relevant time for valuation is October 1, 1985; Newbury Commons Limited Partnership v. Stamford, supra, 226 Conn. 95; and both agree that the value of commercial office space was higher in that year than it was in 1993. As indicated previously, the plaintiff's appraiser used a figure of 66.64%, which was provided by the state of Connecticut's Office of Policy and Management (OPM), as representing the ratio between sales and assessments for the twelve month period between October 1, 1993, the date of assessment, and September 30, 1994. This would result in a fair market value as of October 1, 1985, of $1,732,640.
The defendant points out, however, that during the one year period from October 1, 1992 to September 30, 1993, the year previous to the October 1, 1993 assessment, the ratio of sales/assessments was 125%. The defendant argues that there is no logical reason to use the year after the assessment rather than the year before. Combining the two years, as suggested by the plaintiff, would make better sense and would result in a ratio of 95.82%. Applying this latter figure to the 1993 fair market value of $2,700,000 results in a "trended back" market value in 1985 of $2,587,140.
The problem with using a trended back figure is twofold. First, whether one uses one year or two years, the market value of the subject premises will be less in 1985 than in 1993, and as noted above, both parties agreed that the market value of commercial property such as the plaintiff's was higher in 1985 than in 1993. Second, the expert witness for the plaintiff agreed that he did not make a direct determination of fair market value as of October 1, 1985.
Because neither party presented any credible evidence as to value in 1985, the court determines as a fact that the fair market value as of 1985, the revaluation date, was $2,700,000, the same as the purchase price in September, 1993. Thus, the defendant's valuation of $4,805,570 is excessive and the plaintiff's appeal is sustained. Judgment is entered establishing $2,700,000 as the fair market value as of October 1, 1985, and $1,890,000 as the assessed value of the subject premises on that date, and subsequent years, representing 70% of market CT Page 7496 value.[5] The plaintiff is entitled to a refund with interest,[6] and costs are to be taxed in its favor by the office of the chief clerk.
So Ordered.
Dated at Stamford, Connecticut, this 30 day of June, 1998.
William B. Lewis, Judge