[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Lewis M. Ress, trustee, has filed five separate tax appeals challenging the valuations placed by the Suffield assessor upon each of five lots listed on the grand list of October 1, 1999. The docket numbers, lot numbers and valuations are as follows:
Docket No. Lot No. Assessor's valuation Board of Assessment Acreage Appeals
CV 00-0502753 2B $35,500 $28,400 5.91 CV 00-0502754 2 $191,900 $168,500 16.58 CV 00-0502756 2D $113,200 $105,500 6.09 CV 00-0502758 2E $97,600 $93,100 4.01 CV 00-0502759 2A $143,100 $130,200 9.63
The plaintiff claims that all of the subject lots have substantial wetlands problems that inhibit building on the lots. The plaintiff argues that the wetlands problems detrimentally affect the fair market value of the lots. Judicial District of New Britain
The court finds that, as of October 1, 1999, the plaintiff was the owner of five unimproved lots in a subdivision in Suffield. The subdivision was approved in 1978. Presently, the subject lots are approved industrial lots with no wetland permits. Prior to development, each lot must be approved for use by the Suffield Conservation Commission based on a current soil survey. "As the lots stand today, they are legally subdivided lots, however, they are not legally buildable because there are no Conservation Commission permits that are currently valid. . . . [F]or the permits to be issued, each lot would have to be re-flagged for wetland areas and submitted along with a site plan to the Commission for approval." (Plaintiff's Exhibit B, Appraisal Report by Thomas W. Henry, p. 23.)
The plaintiff's appraiser, Thomas W. Henry, determined that the highest CT Page 16592 and best use of the subject lots was for limited industrial use and valued the lots as follows:
 Lot 2B $8000 Lot 2 $78,000 Lot 2D $8000 Lot 2E $6000 Lot 2A $34,000
Henry concluded that Lots 2B and 2D could not be built upon since he was of the opinion that both parcels were entirely covered with wetlands. Henry valued Lots 2B and 2D at $1300 per acre.
Henry concluded that of the 16.58 acres in Lot 2, 10.09 acres were wetlands and 6.49 acres were non-wetlands area. Henry valued the non-wetlands area at $10,000 per acre and the wetlands area at $1300 per acre.
Henry concluded that Lot E was almost entirely covered with wetlands except for 0.34 acres of land that are located in different portions of the property. Henry valued the wetlands at $1300 per acre and the non-wetlands at $2500 per acre.
Henry concluded that the 9.63 acres of Lot 2A consisted of 8.32 acres of wetlands and 1.31 acres of non-wetlands. The 1.31 acres of non-wetlands are located in two sections of the lot not in close proximity to each other. Henry valued the wetlands at $1300 per acre and the usable non-wetlands at $18,000 per acre for the 1.31 acres.
Henry based his conclusions on the location of wetlands on each of the subject lots as shown on a soil map located in his appraisal report. (Plaintiff's Exhibit B, Henry's Appraisal Report, p. 30.) Henry obtained this soil map from the Suffield Conservation Commission, which is responsible for the determination of wetlands on property located within the town of Suffield.
The Suffield Conservation Commission requires property owners seeking to develop land in Suffield containing wetlands to engage a soil engineer to lay out the wetlands on the property and to then present an application to the Conservation Commission for permission to use the wetlands. Pursuant to General Statutes § 22a-42a, the Conservation Commission can change wetland boundaries or reduce wetlands to permit access to non-wetland areas. As of October 1, 1999, the lots were not approved building lots because approvals previously issued by the Conservation Commission had lapsed. As of October 1, 1999, the plaintiff CT Page 16593 had not submitted an application to the Conservation Commission to develop the subject parcels, nor had the plaintiff obtained an engineering survey outlining the wetlands on the subject property as a prerequisite to any Commission approval for the development of the property. Without an engineering soil survey, it is pure speculation as to the specific extent and location of the wetlands on each lot. Since as of October 1, 1999, the wetlands permits previously issued by the Conservation Commission had expired and the plaintiff had not applied for new permits, it is also speculation as to whether the Conservation Commission would approve any proposed industrial uses of the lots or consider relocating the wetland boundaries for such proposed uses.
Where property is adversely affected by wetlands and watercourse regulations, a property owner may seek tax relief from a diminution of value caused by these regulations. General Statutes § 22a-45 provides in pertinent part: "Any owner of wetlands and watercourses who may be denied a license in connection with a regulated activity affecting such wetlands and watercourses, shall upon written application to the assessor, or board of assessors, of the municipality, be entitled to a revaluation of such property to reflect the fair market value thereof in light of the restriction place upon it by the denial of such license or permit."
Until the plaintiff files applications for wetland permits and the Conservation Commission makes a determination regarding the wetlands on the lots, it is unknown whether, or to what extent, the plaintiff has valid claims that the lots are of limited industrial use and are thus overvalued for assessment purposes. Whether the plaintiff will be granted licenses to use the wetlands on his lots can only be determined after the plaintiff files applications with the Conservation Commission after complying with the Commission's requirement of conducting an engineering survey of the wetlands on the lots.
"In a § 12-117a appeal, the trial court performs a two step function. The burden, in the first instance, is upon the plaintiff to show that he has, in fact, been aggrieved by the action of the board [of assessment appeals] in that his property has been overassessed. . . . Whether a property has been overvalued for tax assessment purposes is a question of fact for the trier. . . . The trier arrives at his own conclusions as to the value of land by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and his own general knowledge of the elements going to establish value." (Citations omitted; internal quotation marks omitted.) Konover v. West Hartford, 242 Conn. 727, 734-35, 699 A.2d 158
(1997). CT Page 16594
While the plaintiff argues in this case that his appraiser's valuations of the lots should be accepted by the court because the town has failed to present expert evidence to support the town's assessment of the properties, as stated above, the initial burden of showing an overvaluation of the property rests with the plaintiff. See Konover v.West Hartford, supra, 242 Conn. 734; see also Ireland v. Wethersfield,242 Conn. 550, 556, 698 A.2d 888 (1997). It is not the town's burden to offer affirmative evidence to support its finding of value. "If the trial court finds that the taxpayer has failed to meet his burden because, for example, the court finds unpersuasive the method of valuation espoused by the taxpayer's appraiser, the trial court may render judgment for the town on that basis alone. On appeals by the taxpayer, we have regularly affirmed such judgments without a showing that the town adduced affirmative evidence sufficient to demonstrate that the assessor's determination of market value was not unjust." Ireland v. Wethersfield, supra, 242 Conn. 557-58. In this action, the use by the plaintiff's appraiser of a "not to scale" Hartford County Soil Survey overlaid onto a subdivision map of the lots (see Plaintiff's Exhibit B, Henry's Appraisal Report, p. 30) is not a credible substitute for a soil engineer's survey of the wetlands on the subject lots as required by the Conservation Commission. As we have previously said, without an engineer's soil survey of the wetlands on the subject property, and a determination by the Commission of the wetland boundaries on the lots, the effect of the wetlands on the development of the property for industrial use is speculation. The subject lots are located in a subdivision in an industrial zone. The highest and best use of the properties is as industrial lots. We cannot find that the town's valuation of the lots as of October 1, 1999 was excessive because the plaintiff's possible development of the lots had not been limited by the town's denial of any wetlands permits regarding the use of the lots.
The values placed on the lots at issue here by the assessor ranged from $4805 to $23,217 per acre. We do not know the extent to which the presence of wetlands on the property was reflected in the assessor's valuation of the lots, and, as discussed above, we do not know the extent of the impact of the wetlands on the potential development of the lots. The assessor's values on a per acre basis, however, fell below or within the broad range of prices per acre of $6352 to $42,782 for the industrial lots presented as comparable sales by the plaintiff's appraiser.
Accordingly, we find that the plaintiff has not sustained his burden of showing that the subject lots were overassessed by the assessor. Judgment may enter dismissing the plaintiff's appeal, without costs to either party. CT Page 16595
Arnold W. Aronson Judge Trial Referee CT Page 16596