[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, National Amusements, Inc. (National), filed this real estate tax appeal challenging the fair market value placed on its theater building located at 105 Prospect Hill Road in East Windsor by the assessor on the grand list of October 1, 1995. National does not contest the valuation placed upon the land and site improvements made by the East Windsor assessor on the 1995 grand list.
The subject property is a twelve-screen multiplex theater constructed in 1994 on twenty-seven acres of land situated on the southwest corner of Bridge Street (Conn. Route 140) and Prospect Hill Road (US Route 5, at the Interchange 45 of Interstate 91), in a B-1 (Business District) zone.
National purchased the twenty-seven acre parcel upon which the building was constructed on January 18, 1994 for a consideration of $4,825,000. The building was constructed with a reinforced concrete foundation, masonry concrete block walls, poured concrete floors, a flat metal deck roof with insulation and a fireproofed steel frame. The building was air conditioned with a sprinkler system and one elevator. The total cost of constructing the building was $5,239,819. The building consists of 59,262 square feet on the first floor and 14,741 square feet on the mezzanine area. A certificate of occupancy was issued for the building on November 16, 1994, and the property was placed on the East Windsor tax rolls for the revaluation year of October 1, 1995.
The East Windsor assessor determined that the fair market value of the subject property on the October 1, 1995 grand list was as follows:
Land $ 2,622,130
Outbuilding 299,650
Main building 9,094,560
CT Page 2128
$12,016,340
The town's appraiser, Christopher K. Kerin (Kerin), determined that the fair market value of the subject property on the October 1, 1995 grand list was as follows:
Land $ 4,825,000
Site improvements 1,000,000
Main building 9,175,000
$15,000,000
National has taken an unusual approach in its appeal contesting the value placed upon the subject property by the town. National first appeared before the East Windsor board of assessment appeals claiming that the assessor had overvalued the building component of the subject property. The board did not reduce the value of the property, and National filed this appeal, seeking solely a reduction in the value of the building, not the value of the land and site improvements.
The plaintiff's appraiser, Arnold J. Grant III (Grant), concluded that the market value of the subject building, reflecting market value as of October 1, 1995 was $6,380,000. The purpose of Grant's appraisal was "to estimate the market value of the fee simple estate of the subject property's primary building, in its physical condition as of October 1, 1999, expressed in terms of market value as of October 1, 1995." (Plaintiff's exhibit K, p. 6.)
The plaintiff does not contest the valuation placed upon the land and site improvements by the assessor as of the revaluation date of October 1, 1995, but rather contends that the assessor has overvalued only the theater building. The plaintiff has carefully framed its complaint in appealing the decision of the board of assessment appeals denying it relief from the assessor's valuation by limiting the appeal only to the valuation of the theater building. The plaintiff seeks to confine this court to deciding only the issue of the valuation of the theater building in a piecemeal fashion, and not to decide the total value of the subject property contending that this court cannot decide issues not raised in the pleadings. (See plaintiff's post-trial brief dated October 25, 2002, p. 7.)
In support of its position, the plaintiff relies on the holding in CT Page 2129Yellow Page Consultants, Inc. v. Omni Home Health Services, Inc.,59 Conn. App. 194, 756 A.2d 309 (2000). In that case, the court stated: "The court is not permitted to decide issues outside of those raised in the pleading. Additionally, it is well established jurisprudence that the pleadings serve to frame the issues before a trial court." (Citations omitted; internal quotation marks omitted.) Id., 200. The cause of action in the Yellow Page case was breach of contract, where the trial court had concluded that no contract existed because of the plaintiff's fraudulent conduct. The appellate court reversed the trial court because the defendant had not pleaded fraud in its defense to the contract action. The court in Yellow Page concluded that the trial court could not consider the element of fraud since it had not been pleaded as a defense in avoidance of the contract. We do not consider Yellow Page, being a common-law cause of action, as controlling a statutory right of appeal pursuant to § 12-117a, for the reasons discussed below.
The town cites Konover v. Town of West Hartford, 242 Conn. 727,699 A.2d 158 (1997), in opposition to the plaintiff's claim that the court is limited to considering only the valuation of the theater building. In Konover, the trial court failed to consider the valuation of a portion of the subject property that had been unintentionally omitted by the assessor in the process of setting a value to the whole property on the revaluation date. The plaintiff in Konover argued, as the plaintiff does here, that the omitted parcel of land was not considered in its appeal before the local board of tax review (now board of assessment appeals), and therefore the value of the omitted property was not before the trial court in its determination of value of the property on appeal. The Supreme Court, in Konover, concluded that the trial court could not exclude part of the taxpayers' property from consideration, but must consider all of the property as a whole. Id., 737. "We have never held that a trial court in a de novo appeal pursuant to § 12-117a may determine the value of only a portion of a taxpayer's property." Id. The ultimate question in a § 12-117a tax appeal is not the value of separate segments of the taxpayer's property, but rather "the ascertainment of the true and actual value of the taxpayer's property."Id., 744.
Our analysis of the plaintiff's claim leads us to the conclusion that, in this § 12-117a appeal, we are not restricted to considering only the fair market value of the theater building, but rather our charge under § 12-117a is to consider the value of the property as a whole.
Considering the taxpayer's property as a whole, not just the theater building, we turn to the issue of whether the plaintiff was aggrieved by the assessor's overvaluation of the property on the October 1, 1995 grand CT Page 2130 list. If we find aggrievement, we must then determine the fair market value of the subject premises on the grand list of October 1, 1995. SeeUnited Technologies Corp. v. East Windsor, 262 Conn. 11, 22-23 (2002).
Both Grant and Kerin were of the opinion that the highest and best use of the subject property as improved is the continued use of the subject property as a multiplex theater. We agree. Both appraisers also agree that the cost approach was the best method to determine value since the subject property was new construction in late 1994, close to the October 1, 1995 revaluation date. Grant did not use the income capitalization approach or the market sales approach to value because of the lack of comparable rents or sales of multiplex theater properties, which are basically owner-operated property. Kerin also did not use the market sales approach because of a lack of comparable sales. However, Kerin did use the income-capitalization approach as a check on his cost approach. We disagree with Kerin that his income approach is a valid check on his cost approach. In considering comparable rents of similar properties, Kerin used theater rentals as far away as Colorado, Illinois and Oklahoma. All of these rentals were not freestanding theaters as in this case, but were located in retail or office centers in other parts of the country. We do not find these comparables to be credible selections for use in this case.
The plaintiff's theory in this tax appeal, of restricting its challenge to the assessor's valuation of only the theater building, and Grant's acquiescence to this theory, is contrary to the principle that in the determination of value using the cost approach, we must consider the separate value of land and site improvements together with the value of the building to arrive at a total cost of replacement or reproduction of the property. The Appraisal Institute, The Appraisal of Real Estate (10th Ed. 1992), pp. 313-15. "Under the cost approach to valuation, the appraiser estimates the current cost of replacing the subject property with adjustments for depreciation, the value of the underlying land, and entrepreneurial profit. See J. Easton Real Estate Valuation in Litigation (2d. Ed. 1995) p. 157." United Technologies Corp. v. East Windsor,supra, 262 Conn. 17 n. 8. What the plaintiff fails to recognize is that the cost approach is one of the three basic recognized methods used to value real estate as a whole, similar to the market sales approach, and the income capitalization approach, and is not used in the context of § 12-117a to break down the individual segments of property for the purpose of a separate valuation.
In considering the fair market value of the subject property as of October 1, 1995, using the cost approach, we must first consider the valuation of the underlying land and site improvements. Grant made no CT Page 2131 independent determination of value of either the land or site improvements. Kerin, on the other hand, considered comparable land sales of property purchased by the plaintiff in Southington and Berlin for the construction of twelve-screen theaters in 1990 and 1993 to arrive at a price per acre of land, which was in excess of the price per acre of the subject land purchased in 1994. Kerin concluded that the sale price of the subject land of $4,825,000 in 1994 represented the fair market value of the land as of October 1, 1995. We find Kerin's conclusion as to the value of the subject land to be credible. We have no indication that the subject sale of land was anything other than an arms-length sale between a willing seller and a willing buyer, and therefor we consider the subject sale to represent fair market value for the land.
The assessor valued the site improvements at $299,650 as one of the components of the value of the subject property. Grant, in his appraisal report, noted that building permits for site improvements totaled $362,000 for site lighting, one sign and retaining walls. (Plaintiff's Exhibit K, p. 25.) Kerin, on the other hand, gave a more detailed and inclusive description of the site improvements as follows: "Parking for 1,017 cars (including 21 handicap spaces), pole mounted parking lighting, building mounted exterior lighting, pedestrian walkway with ramps, stairs and retaining walls in front of the building, landscaping, sidewalks, signage, storm drainage, two sedimentation and detention basins, retaining walls along Prospect Hill Road, etc." (Defendant's Exhibit 4, p. 13.) Since Grant made no independent determination of site value, the only credible evidence of the value for all site improvements is Kerin's opinion that finds the estimated depreciated cost of site improvements to be $1,000,000. We accept Kerin's opinion of value for the site improvements on the subject property.
We next turn to the valuation of the theater building using the cost approach method of valuation. Kerin concluded that as of October 1, 1995, the subject building had a fair market value of $9,175,000. In arriving at his cost of the building under the cost approach, Kerin used the Marshall Valuation Service, a nationally accepted cost-estimating source, "as set forth in their 1994 issues and adjusted by their update sheets to October 1995." (Defendant's exhibit 4, p. 19.) Kerin did not use the actual or historical construction costs of the building in determining his cost to replace the subject building, even though he noted that the actual building cost incurred by the plaintiff was $5,239,819. (See Defendants' Exhibit 4, Addenda, p. A-7.) Kerin's disregard of the actual costs to construct and his complete reliance upon a national valuation service, resulted in an almost $4 million difference in value. CT Page 2132
We find Kerin's sole reliance on the Marshall Valuation Service, in the face of the existence of new costs of construction of the subject building, not to be a credible analysis of the fair market value of the subject building. Cf. United Technologies Corp. v. East Windsor,262 Conn. 20.
Grant, on the other hand, in using the cost approach to value, considered the historical cost of construction as well as the Marshall Valuation Service. Grant adjusted the historical costs of construction for time to arrive at a value of $4,620,000 to $4,650,000. Grant noted that the building permits from the town of East Windsor for the initial cost of construction for the subject building totaled approximately $4,720,000. We have previously accepted as credible Kerin's determination that the actual historical cost of constructing the building was $5,239,819. Grant's analysis of the valuation of the subject building using the cost approach considered the historical cost and Marshall Valuation Service. Using the Marshall Valuation Service, Grant arrived at an estimated cost of $6,380,000. Grant placed greater weight on the Marshall Valuation Service than on the historical costs, noting that the owner-developer saved some development costs through special knowledge of the market or economies of scale.
The basic difference between the cost computations of Kerin and Grant using the Marshall Valuation Service is that Kerin selected an "A" classification of cinema theaters and Grant selected a "C" classification. Since "buyers adjust the prices they are willing to pay by estimating the cost to bring an existing structure up to physical condition and functional utility they desire." See The Appraisal Institute, The Appraisal of Real Estate (10th Ed. 1992), p. 313. We find it more realistic to use the actual construction costs in this instance because the construction occurred so close to the date of revaluation. In the final analysis, both Grant and Kerin relied on the Marshall Valuation Service to estimate the cost of construction of the subject property rather than relying on the actual existing costs of construction. Where the objective is to determine the value of a building using the cost approach, we consider it more credible to use the actual cost of construction in this case, since the date of valuation and the date of construction were so close in time rather than rely upon an estimate developed by the use of a national valuation service. See The Appraisal Institute, The Appraisal of Real Estate (10th Ed. 1992), p. 313.
Our determination of value of the subject property, as of October 1, 1995 is as follows:
Land $ 4,825,000 CT Page 2133
Site improvements 1,000,000
Building 5,239,819
Total $11,064,819
Our finding of total fair market value of $11,064,819 is $951,521 lower than the assessor's valuation of the plaintiff's property on the October 1, 1995 grand list. We therefore find the plaintiff to be aggrieved.
The East Windsor assessor had included the theater seats in the valuation of the realty even though the plaintiff had filed and paid a personal property tax on the theater seats to the town on the lists of October 1, 1995 through October 1, 2001. The plaintiff has been paying double taxation as to the seats in the theater since October 1, 1995.
Grant's valuation of the theater building at $6,380,000 did not include the valuation of the seats installed in the theater. Kerin's valuation also did not include the valuation of the seating in his appraisal. The only issue before us at this time is the valuation of the subject real estate as of the date of October 1, 1995.
Accordingly, as stated above, we find that the fair market value of the subject property on the October 1, 1995 grand list was $11,064,819. The plaintiff's appeal is sustained, without costs to either party.
Arnold W. Aronson
Judge Trial Referee CT Page 2134