## LEWIS M. RESS, TRUSTEE *v.* TOWN OF SUFFIELD
## (AC 23807)

Lavery, C. J., and McLachlan and Peters, Js.

Argued October 20—officially released December 23, 2003

*Barbara M. Schellenberg,* with whom, on the brief, was *Vincent M. Marino,* for the appellant (plaintiff).

*Edward G. McAnaney,* for the appellee (defendant).

*Opinion*

McLACHLAN, J. The plaintiff, Lewis M. Ress, trustee, appeals from the trial court's judgments dismissing his tax appeals. He claims that the court improperly concluded that his burden of establishing overvaluation was not met and that a property owner may seek relief from overvaluation pursuant only to General Statutes § 22a-45. We affirm the judgments of the trial court.

This case concerns consolidated tax appeals involving five unimproved lots owned by the plaintiff in Suffield. After purchasing the lots, the plaintiff challenged their valuations, as determined by the town assessor,[1] due to the presence of wetlands on the properties. Thereafter, the Suffield board of assessment appeals reduced the valuations by approximately 10 percent. Unsatisfied, the plaintiff filed appeals with the Superior Court pursuant to General Statutes § 12-117a.[2] Following the close of evidence, the court found that the plaintiff had not sustained his burden of establishing overvaluation. This appeal ensued.

The plaintiff claims that the court improperly concluded that he had not met his burden of establishing overvaluation. We agree with the trial court.

"Section 12-117a, which allows taxpayers to appeal the decisions of municipal boards of tax review to the

---

[1] Those valuations were on the October 1, 1999 grand list.

[2] General Statutes § 12-117a provides in relevant part: "Any person . . . claiming to be aggrieved by the action of the board of tax review or the board of assessment appeals, as the case may be, in any town or city may, within two months from the date of the mailing of notice of such action, make application . . . with respect to the assessment list . . . to the superior court for the judicial district in which such town or city is situated . . . ."

Superior Court, provide[s] a method by which an owner of property may directly call in question the valuation placed by assessors upon his property . . . ." (Internal quotation marks omitted.) *Konover* v. *West Hartford*, 242 Conn. 727, 734, 699 A.2d 158 (1997). In an appeal pursuant to § 12-117a, "the trial court hears the tax appeal de novo on the premise that, throughout, it is the taxpayer who bears the burden of establishing an overassessment . . . ." *Ireland* v. *Wethersfield*, 242 Conn. 550, 557, 698 A.2d 888 (1997).

We review a court's determination in a tax appeal pursuant to the clearly erroneous standard of review. "Under this deferential standard, [w]e do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 23, 807 A.2d 955 (2002).

The question in this case before both the trial court and the board of assessment appeals was the extent to which wetlands impact the plaintiff's properties. The plaintiff argues that the valuations by the board of assessment appeals did not reflect the true impact.

At trial, the plaintiff introduced the testimony of an appraiser as to the highest and best use of the plaintiff's lots in light of wetlands impact. To establish overvaluation, the plaintiff's appraiser relied primarily on the soil map sketch obtained from the Suffield conservation

commission.[3] The sketch was created by Suffield town engineer Gerald Turbet, who testified that he created it by tracing the boundaries of the wetlands from an enlarged town soil map onto a subdivision map of the plaintiff's lots and that it was not drawn to scale, nor did it accurately depict the location of wetland boundaries on the plaintiff's properties.[4] He indicated that the use of soil maps is but a first step in determining precise wetland contours; the property in dispute must then be examined by a soil scientist. Testifying on behalf of the plaintiff, the chairperson of the Suffield conservation commission confirmed that protocol.[5] Having heard that testimony, the court concluded that "the use by the plaintiff's appraiser of a 'not to scale' Hartford County soil survey overlaid onto a subdivision map of the lots . . . is not a credible substitute for a soil engineer's survey of the wetlands on the subject lots . . . ." (Citation omitted.)

It is basic to our jurisprudence that credibility determinations are within the exclusive province of the court. See *Smith* v. *Smith*, 183 Conn. 121, 123, 438 A.2d 842 (1981). "Because a tax appeal is heard de novo, a trial court judge is privileged to adopt whatever testi-

[3] The plaintiff argues that as the town relies on that soil map sketch to issue notices of violation, the town should therefore be estopped from contesting its accuracy. The plaintiff overlooks the fact that a penalized property owner may challenge the accuracy of a soil map.

General Statutes § 22a-44 (a) provides in relevant part: "If the inland wetlands agency or its duly authorized agent finds that any person is conducting or maintaining any activity, facility or condition which is in violation of . . . the regulations of the inland wetlands agency, [it] may issue a written order . . . to such person . . . to cease immediately such activity or to correct such facility or condition. Within ten days of the issuance of such order the agency shall hold a hearing to provide the person an opportunity to be heard and show cause why the order should not remain in effect. . . ."

[4] Turbet explained that his sketch was "based on maps, not actual field identifications," and described it as "an approximation of the wetland soils."

[5] The plaintiff did not have a surveyor or soil engineer examine the property, nor did he attempt to procure a license from the conservation commission.

mony he reasonably believes to be credible." (Internal quotation marks omitted.) *Sears, Roebuck & Co.* v. *Board of Tax Review,* 241 Conn. 749, 755–56, 699 A.2d 81 (1997). Having heard the testimony of the appraiser and his valuation methodology, the court was free to find it unpersuasive. Likewise, the court was equally free to find credible the testimony of Turbet discrediting the soil map sketch's accuracy.

In a tax appeal, the court may "consider any facts that are relevant to determining whether a taxpayer actually has been overassessed." *Konover* v. *West Hartford,* supra, 242 Conn. 741. "If the trial court finds that the taxpayer has failed to meet his burden . . . [it] may render judgment for the town on that basis alone." *Ireland* v. *Wethersfield,* supra, 242 Conn. 557–58. On the basis of our review of the record, we conclude that the court properly determined that the plaintiff failed to satisfy his burden of establishing overvaluation.

The plaintiff also claims that the court improperly concluded that the properties could not be revalued unless and until the conservation commission acts on an application for wetland permits filed by the plaintiff. Although the court did not expressly state that the relief available to a property owner pursuant to § 22a-45[6] is the exclusive remedy for a taxpayer seeking relief due to wetlands impact, the language of the court's memorandum of decision seems to suggest that it is the exclusive remedy. We agree with the plaintiff that § 12-117a is not so limited. There may be instances when it is necessary to have a determination as contemplated by § 22a-45 to demonstrate permissible use to establish

---

[6] General Statutes § 22a-45 provides in relevant part: "Any owner of wetlands and watercourses who may be denied a license in connection with a regulated activity affecting such wetlands and watercourses, shall upon written application . . . be entitled to a revaluation of such property to reflect the fair market value thereof in light of the restriction placed upon it by the denial of such license or permit . . . ."

value; there may also be instances, for example, when the town's soil maps are sufficiently accurate and based on actual field identifications such that a full regulatory determination as to use is unnecessary to establish the regulatory impact on the value of the property.

In all cases, the burden remains on the property owner, as a threshold issue, to establish overvaluation. It was therefore necessary for the plaintiff to show what portion or portions of his lots were burdened by the wetlands regulations. Because the plaintiff has not satisfied that burden, he cannot satisfy his burden of establishing overvaluation of his lots due to the wetlands regulations.

The judgments are affirmed.

In this opinion the other judges concurred.