CADLEROCK PROPERTIES JOINT VENTURE, L.P. *v.* TOWN OF ASHFORD
(AC 27056)

DiPentima, Harper and West, Js.

Argued September 28—officially released November 28, 2006

*Edward C. Taiman, Jr.*, with whom, on the brief, was *Melinda B. Kaufmann*, for the appellant-appellee (plaintiff).

*Dennis O'Brien*, with whom was *Susan M. Johnson*, for the appellee-appellant (defendant).

*Opinion*

WEST, J. The plaintiff, Cadlerock Properties Joint Venture, L.P., appeals from the judgment of the trial court determining that the defendant, the town of Ashford (town), overvalued the plaintiff's real property and reducing the fair market value of that property from $1,369,630 to $955,000. The town has filed a cross appeal. On appeal, the plaintiff claims that the court

should have reduced the fair market value of its property to $143,500 because it is environmentally contaminated. On cross appeal, the town claims that the court improperly reduced the fair market value of the plaintiff's property. As to both the appeal and cross appeal, we affirm the judgment of the trial court.

The plaintiff owns a 335 acre parcel of unimproved land in Ashford and Willington. That parcel contains significant sources of soil, groundwater and solid waste contamination concentrated in two principal areas, one in the 51 acre Willington portion and the other in the 284 acre Ashford portion. The plaintiff acquired the parcel on November 15, 1996, from its affiliate, Cadle Properties of Connecticut, Inc. (Cadle Properties), which had acquired it on September 7, 1995. The department of environmental protection (department), which had failed to convince Cadle Properties to remediate the contamination voluntarily, issued an abatement order to the plaintiff on August 15, 1997.[1]

The subject property in this tax appeal is the Ashford portion of the plaintiff's parcel. The Ashford portion is divided into ten lots. Three of those lots are located in a commercial zone, three others are located in a residential-agricultural zone, and the remaining four are located in both commercial and residential-agricultural zones. The contamination is located in two lots, one of which is entirely in a commercial zone, and the other of which is in both commercial and residential-agricultural zones. The department's abatement order, however, is not restricted to those two lots.

Pursuant to General Statutes § 12-117a, the plaintiff appealed to the Superior Court from the town's valuation of the subject property at $1,369,630 on the grand

---

[1] Our Supreme Court rejected the plaintiff's appeal from the dismissal of its administrative appeal from the department's decision to issue the abatement order. See *Cadlerock Properties Joint Venture, L.P.* v. *Commissioner of Environmental Protection*, 253 Conn. 661, 757 A.2d 1 (2000), cert. denied, 531 U.S. 1148, 121 S. Ct. 1089, 148 L. Ed. 2d 963 (2001).

lists of October 1, 2002, 2003 and 2004. At trial, the plaintiff presented an appraisal performed by Robert G. Stewart. Using the sales comparison approach, Stewart testified that the value of the subject property would be $955,000 if it were not contaminated. Stewart also explained that the presence of contamination reduces the value of property by 75 percent to 95 percent. Taking the midpoint of that range, Stewart concluded that the contamination located in two of the ten lots comprising the subject property reduced the value of the entire property by approximately 85 percent, to $143,500. The town countered Stewart's appraisal by offering the testimony of its assessor, Emily Kasacek, and an appraiser who had worked with her, John J. Valente, in support of the town's valuation.

The court found that Stewart's appraisal of the subject property without regard to its contamination was more credible than the town's valuation, but the court declined to reduce the value to take into account the presence of contamination. The court relied on General Statutes § 12-63e, which provides in relevant part that "when determining the value of any property, except residential property, for purpose of the assessment for property taxes, the assessors of a municipality shall not reduce the value of any property due to any polluted or environmentally hazardous condition existing on such property if such condition was caused by the owner of such property or if a successor in title to such owner acquired such property after any notice of the existence of any such condition was filed on the land records in the town where the property is located. . . ."

Although it was undisputed that the plaintiff did not cause the contamination and that notice of the contamination was filed on the Ashford land records on December 30, 1998, more than two years after the plaintiff acquired the subject property, the court found that the plaintiff had actual knowledge of the contamination

when it acquired the subject property and consequently was not entitled to benefit from a reduction in value due to contamination. In reaching that conclusion, the court did not apply the exception in § 12-63e for residential property to the three residential-agricultural lots within the subject property because they are not contaminated. The court treated the contaminated lot located in both commercial and residential-agricultural zones as a commercial lot because the contamination apparently is located in the commercial portion of that lot, which is significantly larger than the residential-agricultural portion. The court also determined that the existence of the abatement order was not a proper ground on which to reduce the value of the subject property. The court therefore rendered judgment sustaining the plaintiff's appeal and reducing the value of the subject property from $1,369,630 to $955,000. The plaintiff then filed this appeal, and the town cross appealed.

"In § 12-117a tax appeals, the trial court tries the matter de novo and the ultimate question is the ascertainment of the true and actual value of the [taxpayer's] property. . . . At the de novo proceeding, the taxpayer bears the burden of establishing that the assessor has overassessed its property. . . . Once the taxpayer has demonstrated aggrievement by proving that its property was overassessed, the trial court [will] then undertake a further inquiry to determine the amount of the reassessment that would be just. . . . The trier of fact must arrive at [its] own conclusions as to the value of [the taxpayer's property] by weighing the opinion of the appraisers, the claims of the parties in light of all the circumstances in evidence bearing on value, and [its] own general knowledge of the elements going to establish value . . . .

"We review the trial court's conclusion in a tax appeal pursuant to the well established clearly erroneous standard of review. Under this deferential standard, [w]e

do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Aetna Life Ins. Co.* v. *Middletown*, 77 Conn. App. 21, 26, 822 A.2d 330, cert. denied, 265 Conn. 901, 829 A.2d 419 (2003). "When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Commissioner of Transportation* v. *Rocky Mountain, LLC*, 277 Conn. 696, 728, 894 A.2d 259 (2006).

I

We first address the plaintiff's appeal. The plaintiff claims that the court should have reduced the value of the subject property to $143,500 because it is contaminated. We disagree.

The plaintiff's principal argument in support of its claim is that the court improperly relied on § 12-63e because actual knowledge of the presence of contamination is not mentioned in that statute as a ground on which to deny a reduction in property value. In examining the court's reliance on § 12-63e, we are guided by General Statutes § 1-2z, which provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and

considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

Section 12-63e plainly and unambiguously prohibits the reduction in value of contaminated property if the owner caused the contamination or a successor in title acquired it after notice of the contamination was filed on the town land records. There is no reference in § 12-63e to actual knowledge of contamination as a ground on which to deny a reduction in property value. Nevertheless, if we were to accept the plaintiff's argument that its actual knowledge of the contamination is irrelevant, we would obtain an absurd result. Section 12-63e plainly indicates that constructive notice of the existence of contamination is a sufficient basis on which to deny a reduction in property value. "Constructive notice is premised on the policy determination that under certain circumstances a person should be treated as if he had actual knowledge so that one should not be permitted to deny knowledge when he is acting so as to keep himself ignorant." (Internal quotation marks omitted.) *Hall* v. *Burns*, 213 Conn. 446, 479, 569 A.2d 10 (1990). Actual knowledge is superior to constructive notice. In the present case, the plaintiff had actual knowledge of the contamination,[2] and, therefore, it would be absurd to apply § 12-63e rigidly to permit the lack of constructive notice filed on the town land records to trump the plaintiff's actual knowledge of the contamination when it acquired the subject property.[3]

[2] "The existence of actual or constructive notice is a question of fact properly within the province of the trial court." (Internal quotation marks omitted.) *Henriquez* v. *Allegre*, 68 Conn. App. 238, 248 n.15, 789 A.2d 1142 (2002). On the basis of our review of the record and briefs, we determine that the court's finding that the plaintiff had actual knowledge of the contamination was not clearly erroneous.

[3] This court reached a similar conclusion in a case in which a bank having actual notice of an action for foreclosure of a mechanic's lien nevertheless claimed that the lien was invalid because the notice of lis pendens did not name all of the encumbrancers on the property at issue, depriving them of

The plaintiff also argues that the court should have reduced the value of the subject property to $143,500 because the abatement order diminishes the value of the subject property. That argument requires little discussion in light of our conclusion regarding § 12-63e. The plaintiff had actual knowledge of the contamination when it acquired the subject property, and, therefore, it was foreseeable that an abatement order could be issued. Under those circumstances, the abatement order does not entitle the plaintiff to a reduction in value for the purpose of the assessment of property taxes. The court properly declined to reduce the value of the subject property due to its contamination.

II

We next address the town's cross appeal. The town claims that the court improperly reduced the fair market value of the subject property from $1,369,630 to $955,000. The town argues that the methodology underlying the $955,000 appraisal by Stewart is inferior to the methodology used by the town assessor. "Because a tax appeal is heard de novo, a trial court judge is privileged to adopt whatever testimony he reasonably believes to be credible." (Internal quotation marks omitted.) *Ress* v. *Suffield*, 80 Conn. App. 630, 633–34, 836 A.2d 475 (2003), cert. denied, 267 Conn. 920, 841 A.2d 1191 (2004). The court found that Stewart's appraisal

constructive notice of the foreclosure action. See *First Constitution Bank* v. *Harbor Village Ltd. Partnership*, 37 Conn. App. 698, 702–705, 657 A.2d 1110, cert. denied, 235 Conn. 902, 665 A.2d 901 (1995). This court stated: "The purpose of the lis pendens in the context of a mechanic's lien is the same as it is in any other situation in which real property is the subject of litigation; namely, it is intended to give constructive notice to persons seeking to purchase or encumber property after the recording of a lien or the commencement of a foreclosure suit. . . . Thus, if a person has actual notice of the lien and a suit commenced thereon, *that actual notice may take the place of constructive notice* imparted by the filing of a lis pendens. . . . *To hold otherwise would exalt constructive notice over actual notice.*" (Emphasis added; internal quotation marks omitted.) Id., 703–704.

was more credible than the town's valuation. Our review indicates that the court's determination was reasonable. Accordingly, we conclude that the court's rejection of the town's valuation in favor of Stewart's appraisal was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.